PEOPLE EXPRESS AIRLINES, INC., PLAINTIFF-RESPONDENT, v. CONSOLIDATED RAIL CORPORATION, A NEW JERSEY CORPORATION; BASF WYANDOTTE COMPANY, A NEW JERSEY CORPORATION; AND UNION TANK CAR COMPANY, A DELAWARE CORPORATION, DEFENDANTS-APPELLANTS.

Argued April 22, 1985—Decided July 26, 1985.

*Louis A. Ruprecht* argued the cause for appellant Consolidated Rail Corporation (*McDermott, McGee & Ruprecht*, attorneys).

*John C. Heavey* argued the cause for appellant Union Tank Car Company (*Carpenter, Bennett & Morrissey*, attorneys; *Thomas M. Moore*, on the brief).

*Dennis M. Cavanaugh* argued the cause for appellant BASF Wyandotte Company (*Tompkins, McGuire & Wachenfeld*, attorneys).

*Raymond P. D'Uva* argued the cause for respondent (*Rodino, Forman & D'Uva*, attorneys; *Mr. D'Uva* and *Mary Ann Dubiel*, on the brief).

The opinion of the Court was delivered by

HANDLER, J.

This appeal presents a question that has not previously been directly considered: whether a defendant's negligent conduct that interferes with a plaintiff's business resulting in purely economic losses, unaccompanied by property damage or personal injury, is compensable in tort. The appeal poses this issue in the context of the defendants' alleged negligence that caused a dangerous chemical to escape from a railway tank car, resulting in the evacuation from the surrounding area of persons whose safety and health were threatened. The plaintiff, a commercial airline, was forced to evacuate its premises and

suffered an interruption of its business operations with resultant economic losses.

## I.

Because of the posture of the case—an appeal taken from the grant of summary judgment for the defendant railroad, subsequently reversed by the Appellate Division, 194 *N.J.Super.* 349 (App.Div.1984)—we must accept plaintiff's version of the facts as alleged. The facts are straight-forward.

On July 22, 1981, a fire began in the Port Newark freight yard of defendant Consolidated Rail Corporation (Conrail) when ethylene oxide manufactured by defendant BASF Wyandotte Company (BASF) escaped from a tank car, punctured during a "coupling" operation with another rail car, and ignited. The tank car was owned by defendant Union Tank Car Company (Union Car) and was leased to defendant BASF.

The plaintiff asserted at oral argument that at least some of the defendants were aware from prior experiences that ethylene oxide is a highly volatile substance; further, that emergency response plans in case of an accident had been prepared. When the fire occurred that gave rise to this lawsuit, some of the defendants' consultants helped determine how much of the surrounding area to evacuate. The municipal authorities then evacuated the area within a one-mile radius surrounding the fire to lessen the risk to persons within the area should the burning tank car explode. The evacuation area included the adjacent North Terminal building of Newark International Airport, where plaintiff People Express Airlines' (People Express) business operations are based. Although the feared explosion never occurred, People Express employees were prohibited from using the North Terminal for twelve hours.

The plaintiff contends that it suffered business-interruption losses as a result of the evacuation. These losses consist of cancelled scheduled flights and lost reservations because employees were unable to answer the telephones to accept book-

ings; also, certain fixed operating expenses allocable to the evacuation time period were incurred and paid despite the fact that plaintiff's offices were closed. No physical damage to airline property and no personal injury occurred as a result of the fire.

According to People Express' original complaint, each defendant acted negligently and these acts of negligence proximately caused the plaintiff's harm. An amended complaint alleged additional counts of nuisance and strict liability based on the defendants' undertaking an abnormally dangerous activity, as well as defective manufacture or design of the tank car, causes of action with which we are not concerned here. Defendants filed answers and cross-claims for contribution pursuant to the Joint Tortfeasors Contribution Law, *N.J.S.A.* 2A:53A–1 to –6.

Conrail moved for summary judgment, seeking dismissal of the complaint and cross-claims against it; the motion was opposed by plaintiff, People Express, and defendants BASF and Union Car. The trial court granted Conrail's summary judgment motion on the ground that absent property damage or personal injury economic loss was not recoverable in tort. Defendants BASF and Union Car subsequently sought summary judgment dismissing the complaint; the trial court also granted these motions based on the same reasoning.

The Appellate Division granted plaintiff's interlocutory request for leave to appeal and reversed the trial court's order granting summary judgment. The Appellate Division held that recovery of negligently caused economic losses was not automatically barred by the absence of property damage and that summary judgment was inappropriate. 194 *N.J.Super.* at 355–56. The cause was remanded to the trial court with instructions to determine whether the evidence could support the finding of a foreseeable risk of harm to the plaintiff. This Court granted defendant Union Car's petition for certification, in which Conrail and BASF joined, and denied People Express'

motion to dismiss the petition for certification. 99 *N.J.* 169, 170 (1984).

## II.

██ The single characteristic that distinguishes parties in negligence suits whose claims for economic losses have been regularly denied by American and English courts from those who have recovered economic losses is, with respect to the successful claimants, the fortuitous occurrence of physical harm or property damage, however slight. It is well-accepted that a defendant who negligently injures a plaintiff or his property may be liable for all proximately caused harm, including economic losses. *See Palsgraf v. Long Island R.R.*, 248 *N.Y.* 339, 162 *N.E.* 99 (1928); W. Prosser & W. Keeton, *The Law of Torts* § 129, at 997 (5th ed. 1984) (Prosser & Keeton). Nevertheless, a virtually *per se* rule barring recovery for economic loss unless the negligent conduct also caused physical harm has evolved throughout this century, based, in part, on *Robins Dry Dock & Repair Co. v. Flint*, 275 *U.S.* 303, 48 *S.Ct.* 134, 72 *L.Ed.*2d 290 (1927) and *Cattle v. Stockton Waterworks Co.*, 10 *Q.B.* 453 (1875). This has occurred although neither case created a rule absolutely disallowing recovery in such circumstances.[1] *See, e.g., Stevenson v. East Ohio Gas Co.*, 73 *N.E.*2d 200 (Ohio Ct.App.1946) (employee who was prohibited from working at his plant, which was closed due to conflagration begun by negligent rupture of stored liquified natural gas at nearby utility, could not recover lost wages); *Byrd v. English*, 117 *Ga.* 191, 43 *S.E.* 419 (1903) (plaintiff who owned printing plant could not recover lost profits when defendant negligently damaged utility's electrical conduits that supplied

---

[1] In *Robins Dry Dock, supra,* Justice Holmes ruled that the law did not protect third parties whose contractual expectations were disrupted when the contract was "unknown to the doer of the wrong." *Id.* at 309, 48 *S.Ct.* at 135, 72 *L.Ed.* at 292. In *Stockton Waterworks,* the court grounded its denial of recovery on the absence of a proximately caused injury. 10 *Q.B.* at 457.

power to the plant); *see also Restatement (Second) of Torts* § 766C (1979) (positing rule of nonrecovery for purely economic losses absent physical harm). *But see In re Kinsman Transit Co.*, 388 *F.*2d 821, 824 (2d Cir.1968) (after rejecting an inflexible rule of nonrecovery, court applied traditional proximate cause analysis to claim for purely economic losses).

The reasons that have been advanced to explain the divergent results for litigants seeking economic losses are varied. Some courts have viewed the general rule against recovery as necessary to limit damages to reasonably foreseeable consequences of negligent conduct. This concern in a given case is often manifested as an issue of causation and has led to the requirement of physical harm as an element of proximate cause. In this context, the physical harm requirement functions as part of the definition of the causal relationship between the defendant's negligent act and the plaintiff's economic damages; it acts as a convenient clamp on otherwise boundless liability. *See Union Oil Co. v. Oppen*, 501 *F.*2d 558, 563 (9th Cir.1974); *The Federal No. 2*, 21 *F.*2d 313 (2d Cir.1927); *Byrd v. English, supra*, 117 *Ga.* 191, 43 *S.E.* 419 (1903). The physical harm rule also reflects certain deep-seated concerns that underlie courts' denial of recovery for purely economic losses occasioned by a defendant's negligence. These concerns include the fear of fraudulent claims, mass litigation, and limitless liability, or liability out of proportion to the defendant's fault. *See In re Kinsman Transit Co., supra*, 388 *F.*2d at 823; *Weller & Co. v. Foot & Mouth Disease Research Inst.* [1966], 1 *Q.B.* 569, 577; *Stevenson v. East Ohio Gas Co., supra*, 73 *N.E.*2d at 203.

■ The assertion of unbounded liability is not unique to cases involving negligently caused economic loss without physical harm. Even in negligence suits in which plaintiffs have sustained physical harm, the courts have recognized that a tortfeasor is not necessarily liable for *all* consequences of his conduct. While a lone act can cause a finite amount of physical harm, that harm may be great and very remote in its final

consequences.  A single overturned lantern may burn Chicago.
Some limitation is required;  that limitation is the rule that a
tortfeasor is liable only for that harm that he proximately
caused.  Proximate or legal cause has traditionally functioned
to limit liability for negligent conduct.  Duty has also been
narrowly defined to limit liability.  Compare the majority and
dissenting opinions in *Palsgraf v. Long Island R.R., supra,* 248
*N.Y.* 339, 162 *N.E.* 99.  Thus, we proceed from the premise that
principles of duty and proximate cause are instrumental in
limiting the amount of litigation and extent of liability in cases
in which no physical harm occurs just as they are in cases
involving physical injury.

Countervailing considerations of fairness and public policy
have led courts to discard the requirement of physical harm as
an element in defining proximate cause to overcome the prob-
lem of fraudulent or indefinite claims.  *See Portee v. Jaffee,* 84
*N.J.* 88 (1980);  *Dillon v. Legg,* 68 *Cal.*2d 728, 69 *Cal.Rptr.* 72,
441 *P.*2d 912 (1968) (abandoning zone of danger rule in favor of
a foreseeability test to determine whether the plaintiff may
recover for mental distress arising from physical harm to
another).  In this context, *see, e.g., Portee v. Jaffee, supra,* as
well as in variant settings, *see Merenoff v. Merenoff,* 76 *N.J.*
535 (1978), we have subordinated the threat of potential base-
less claims to the right of an aggrieved individual to pursue a
just and fair claim for redress attributable to the wrongdoing
of another.  The asserted inability to define damages in cases
arising under the cause of action for negligent infliction of
emotional distress absent impact or near-impact has not hin-
dered adjudication of those claims.  Nor is there any indication
that unfair awards have resulted.

The troublesome concern reflected in cases denying recovery
for negligently-caused economic loss is the alleged potential for
infinite liability, or liability out of all proportion to the defend-
ant's fault.  This objection is also not confined to negligently-
caused economic injury.  *See infra* at 252–253.  The same
objection has been asserted and, ultimately, rejected by this

Court and others in allowing recovery for other forms of negligent torts, *see H. Rosenblum, Inc. v. Adler*, 93 *N.J.* 324 (1983), and in the creation of the doctrine of strict liability for defective products, *see Feldman v. Lederle Laboratories*, 97 *N.J.* 429 (1984); *Henningsen v. Bloomfield Motors, Inc.*, 32 *N.J.* 358 (1960), and ultrahazardous activities, *see State, Dep't of Envtl. Protection v. Ventron Corp.*, 94 *N.J.* 473 (1983). *See also* Carpenter, "Interference With Contract Relations," 41 *Harv.L.Rev.* 728, 742 (1928) (noting that most advances in tort law have been attended by reluctance to take the step forward). The answer to the allegation of unchecked liability is not the judicial obstruction of a fairly grounded claim for redress. Rather, it must be a more sedulous application of traditional concepts of duty and proximate causation to the facts of each case. *See Soler v. Castmaster, Div. of H.P.M. Corp.*, 98 *N.J.* 137 (1984).

It is understandable that courts, fearing that if even one deserving plaintiff suffering purely economic loss were allowed to recover, all such plaintiffs could recover, have anchored their rulings to the physical harm requirement. While the rationale is understandable, it supports only a limitation on, not a denial of, liability. The physical harm requirement capriciously showers compensation along the path of physical destruction, regardless of the status or circumstances of individual claimants. Purely economic losses are borne by innocent victims, who may not be able to absorb their losses. *See* Comment, 88 *Harv.L. Rev.* 444, 449–50 (1974). In the end, the challenge is to fashion a rule that limits liability but permits adjudication of meritorious claims. The asserted inability to fix chrystalline formulae for recovery on the differing facts of future cases simply does not justify the wholesale rejection of recovery in all cases.

Further, judicial reluctance to allow recovery for purely economic losses is discordant with contemporary tort doctrine. The torts process, like the law itself, is a human institution designed to accomplish certain social objectives. One objective is to ensure that innocent victims have avenues of legal redress,

absent a contrary, overriding public policy. *See Kelly v. Gwinnell,* 96 *N.J.* 538 (1984); *Evers v. Dollinger,* 95 *N.J.* 399 (1984); *Costa v. Josey,* 83 *N.J.* 49 (1980); *Berman v. Allan,* 80 *N.J.* 421 (1979); *Immer v. Risko,* 56 *N.J.* 482 (1970); *Henningsen v. Bloomfield Motors, Inc., supra,* 32 *N.J.* 358. This reflects the overarching purpose of tort law: that wronged persons should be compensated for their injuries and that those responsible for the wrong should bear the cost of their tortious conduct.

Other policies underlie this fundamental purpose. Imposing liability on defendants for their negligent conduct discourages others from similar tortious behavior, fosters safer products to aid our daily tasks, vindicates reasonable conduct that has regard for the safety of others, and, ultimately, shifts the risk of loss and associated costs of dangerous activities to those who should be and are best able to bear them. Although these policies may be unevenly reflected or imperfectly articulated in any particular case, we strive to ensure that the application of negligence doctrine advances the fundamental purpose of tort law and does not unnecessarily or arbitrarily foreclose redress based on formalisms or technicalisms. Whatever the original common law justifications for the physical harm rule, contemporary tort and negligence doctrine allow—indeed, impel—a more thorough consideration and searching analysis of underlying policies to determine whether a particular defendant may be liable for a plaintiff's economic losses despite the absence of any attendant physical harm. *See State v. Culver,* 23 *N.J.* 495, 505 *cert.* den., 354 *U.S.* 925, 77 *S.Ct.* 1387, 1 *L.Ed.*2d 1441 (1957); *see also Renz v. Penn Central Corp.,* 87 *N.J.* 437 (1981) (railroad immunity act's imputation of contributory negligence to minor injured while playing on railroad did not constitute absolute bar to recovery but was to be construed as a common law issue bearing on comparative fault).

### III.

We may appropriately consider two relevant avenues of analysis in defining a cause of action for negligently-caused eco-

nomic loss. The first examines the evolution of various exceptions to the rule of nonrecovery for purely economic losses, and suggests that the exceptions have cast considerable doubt on the validity of the current rule and, indeed, have laid the foundation for a rule that would allow recovery. The second explores the elements of a suitable rule and adopts the traditional approach of foreseeability as it relates to duty and proximate cause molded to circumstances involving a claim only for negligently-caused economic injury.

## A.

Judicial discomfiture with the rule of nonrecovery for purely economic loss throughout the last several decades has led to numerous exceptions in the general rule. Although the rationalizations for these exceptions differ among courts and cases, two common threads run throughout the exceptions. The first is that the element of foreseeability emerges as a more appropriate analytical standard to determine the question of liability than a *per se* prohibitory rule. The second is that the extent to which the defendant knew or should have known the particular consequences of his negligence, including the economic loss of a particularly foreseeable plaintiff, is dispositive of the issues of duty and fault.

One group of exceptions is based on the "special relationship" between the tortfeasor and the individual or business deprived of economic expectations. Many of these cases are recognized as involving the tort of negligent misrepresentation, resulting in liability for specially foreseeable economic losses. Importantly, the cases do not involve a breach of contract claim between parties in privity; rather, they involve tort claims by innocent third parties who suffered purely economic losses at the hands of negligent defendants with whom no direct relationship existed. Courts have justified their finding of liability in these negligence cases based on notions of a special relationship between the negligent tortfeasors and the foreseeable plaintiffs

who relied on the quality of defendants' work or services, to their detriment. The special relationship, in reality, is an expression of the courts' satisfaction that a duty of care existed because the plaintiffs were particularly foreseeable and the injury was proximately caused by the defendant's negligence.

The special relationship exception has been extended to auditors, *see H. Rosenblum, Inc. v. Adler, supra,* 93 *N.J.* 324 (independent auditor whose negligence resulted in inaccurate public financial statement held liable to plaintiff who bought stock in company for purposes of sale of business to company; stock subsequently proved to be worthless); surveyors, *see Rozny v. Marnul,* 43 *Ill.*2d 54, 250 *N.E.*2d 656 (1969) (surveyor whose negligence resulted in error in depicting boundary of lot held liable to remote purchaser); termite inspectors, *see Hardy v. Carmichael,* 207 *Cal.App.*2d 218, 24 *Cal.Rptr.* 475 (Cal.Ct. App.1962) (termite inspectors whose negligence resulted in purchase of infested home liable to out-of-privity buyers); engineers, *see M. Miller Co. v. Central Contra Costa Sanitary Dist.,* 198 *Cal.App.*2d 305, 18 *Cal.Rptr.* 13 (Cal.Ct.App.1961) (engineers whose negligence resulted in successful bidder's losses in performing construction contract held liable); attorneys, *see Lucas v. Hamm,* 56 *Cal.*2d 583, 15 *Cal.Rptr.* 821, 364 *P.*2d 685 (1961), *cert.* den., 368 *U.S.* 987, 82 *S.Ct.* 603, 7 *L.Ed.*2d 525 (1962) (attorney whose negligence caused intended beneficiary to be deprived of proceeds of the will was liable to beneficiary); notaries public, *see Immerman v. Ostertag,* 83 *N.J.Super.* 364 (Law Div.1964); *Biakanja v. Irving,* 49 *Cal.*2d 647, 320 *P.*2d 16 (1958) (notaries public whose negligence caused out-of-privity mortgagee and intended beneficiary of will, respectively, to be deprived of expected proceeds held liable); architects, *see United States v. Rogers & Rogers,* 161 *F.Supp.* 132 (S.D.Cal.1958) (architects whose negligence resulted in use of defective concrete liable to out-of-privity prime contractor); weighers, *see Glanzer v. Shepard,* 233 *N.Y.* 236, 135 *N.E.* 275 (1922) (public weigher whose negligence caused remote buyer's losses was liable for loss); and telegraph com-

panies, *see Western Union Tel. Co. v. Mathis*, 215 *Ala.* 282, 110 *So.* 399 (1926) (telegraph company whose negligent transmission caused plaintiff not to obtain contract was liable); *see also* W. Prosser, *The Law of Torts* § 107, at 705 (4th ed. 1971); *Restatement (Second) of Torts* § 552 (1977) (positing recovery for negligent misrepresentation). *Cf. Strauss v. Belle Realty Co.*, 65 *N.Y.*2d 399, 492 *N.Y.S.*2d 555, 482 *N.E.*2d 34 (1985); *Food Pageant, Inc. v. Consolidated Edison Co.*, 54 *N.Y.*2d 167, 445 *N.Y.S.*2d 60, 429 *N.E.*2d 738 (1981); *Newlin v. New England Tel. & Tel. Co.*, 316 *Mass.* 234, 54 *N.E.*2d 929 (1944) (although some physical harm occurred in each case due to utility blackout, plaintiffs recovered economic losses either in negligence or as third party beneficiaries of contract for electricity).

A related exception in which courts have allowed recovery for purely economic losses has been extended to plaintiffs belonging to a particularly foreseeable group, such as sailors and seamen, for whom the law has traditionally shown great solicitude. *See Carbone v. Ursich*, 209 *F.*2d 178 (9th Cir.1953) (plaintiff seaman recovered lost wages resulting from lack of work while the ship on which they were employed, damaged through defendant's negligence, was being repaired); *accord Main v. Leask, Sess.Cas.* 772 (Scot.2d Div.1910) (by implication).

Courts have found it fair and just in all of these exceptional cases to impose liability on defendants who, by virtue of their special activities, professional training or other unique preparation for their work, had particular knowledge or reason to know that others, such as the intended beneficiaries of wills (*e.g., Lucas v. Hamm, supra*) or the purchasers of stock who were expected to rely on the company's financial statement in the prospectus (*e.g., H. Rosenblum, Inc. v. Adler, supra*), would be economically harmed by negligent conduct. In this group of cases, even though the particular plaintiff was not always foreseeable, the particular class of plaintiffs was foreseeable as was the particular type of injury.

A very solid exception allowing recovery for economic losses has also been created in cases akin to private actions for public nuisance. Where a plaintiff's business is based in part upon the exercise of a public right, the plaintiff has been able to recover purely economic losses caused by a defendant's negligence. *See, e.g., Louisiana ex rel. Guste v. M/V Testbank,* 752 *F.*2d 1019 (5th Cir.1985) (en banc) (defendants responsible for ship collision held liable to all commercial fishermen, shrimpers, crabbers and oystermen for resulting pollution of Mississippi River); *Union Oil Co. v. Oppen,* 501 *F.*2d 558 (9th Cir.1974) (fishermen making known commercial use of public waters may recover economic losses due to defendant's oil spill); *Masonite Corp. v. Steede,* 198 *Miss.* 530, 23 *So.*2d 756 (1945) (en banc) (operator of fishing resort may recover lost profits due to pollution); *Hampton v. North Carolina Pulp Co.,* 223 *N.C.* 535, 27 *S.E.*2d 538 (1943) (polluter liable for economic losses of downstream riparian landowners); *Columbia River Fishermen's Protective Union v. City of St. Helens,* 160 *Or.* 654, 87 *P.*2d 195 (1939) (same as *Union Oil Co., supra*); *see also Burgess v. M/V Tamano,* 370 *F.Supp.* 247 (D.Me.1973) (on nuisance theory, commercial fisherman may recover lost profits due to oil spill).[2] *Cf. Birchwood Lakes Colony Club v. Bor-*

---

[2]It has been suggested that courts are ill-equipped to manage efficiently the kind of litigation (and concommitant resource allocation) stemming from the type of disasters that may be produced by negligent mishaps in ultrahazardous businesses, many of which are concentrated here in New Jersey. *See, e.g., Louisiana ex rel. Guste v. M/V Testbank,* 752 *F.*2d 1019, 1032–34 (5th Cir.1985) (*en banc*) (Gee, J. and Clark, C.J., concurring) (denying recovery to businesses dependent on commercial fishing that lost profits when twelve tons of a toxic chemical spilled into the Mississippi River and the river was closed to fishing for three weeks; commercial fishing businesses recovered). We believe, however, that it would be unwise for the Court to sidestep the question presented on this appeal by rigid adherence to the physical harm rule. Absent forthcoming remedies from our coordinate branches of government, it would seem to serve justice better for a court of law to fashion a remedy in a particular case, and perhaps be corrected by the legislature, than for innocent victims to have no redress at all. *E.g., Kelly v. Gwinnell,* 96 *N.J.* 538 (1984). "[T]he difficulties of adjudication [should not] frustrate the principle that there be a remedy for

*ough of Medford Lakes,* 90 *N.J.* 582 (1982) (residents whose use of lakeside properties was diminished by pollution from defendant's sewage treatment plant could sue for compensatory damages on nuisance theory). The theory running throughout these cases, in which the plaintiffs depend on the exercise of the public or riparian right to clean water as a natural resource, is that the pecuniary losses suffered by those who make direct use of the resource are particularly foreseeable because they are so closely linked, through the resource, to the defendants' behavior.[3]

Particular knowledge of the economic consequences has sufficed to establish duty and proximate cause in contexts other than those already considered. In *Henry Clay v. Jersey City,* 74 *N.J.Super.* 490 (Ch.Div.1962), aff'd, 84 *N.J.Super.* 9 (App. Div.1964), for example, a lessee-manufacturer had to vacate the building in which its business was located because of the defendant city's negligent failure to maintain its sewer line while the line was repaired. While there was some property

---

every substantial wrong." *Dillon v. Legg, supra,* 68 *Cal.*2d at 739, 69 *Cal.Rptr.* at 79, 441 *P.*2d at 919.

[3] A further compromise of the nonrecovery rule may be discerned in cases in which courts have allowed a plaintiff to recover only the added costs of performing the contract, but not lost profits, without expressly resting the decision on such considerations as a special relationship or foreknowledge of a particular class of plaintiffs. *See J. Ray McDermott & Co. v. S.S. Egero,* 453 *F.* 2d 1202 (5th Cir.1972) (defendant who negligently interfered with construction contract was liable for liquidated damages paid to subcontractor, though court said subcontractor could not have recovered if he had sued in his own right); *Dominion Tape of Canada Ltd. v. L.R. McDonald & Sons, Ltd.,* 3 *Ont.* 627 (1971) (defendant, who caused power failure that forced plaintiff manufacturer to cease manufacturing, was liable for workers' lost wages, required to be paid under the plaintiff's employment contract, but no lost profits); *Midvale Coal Co. v. Cardox Corp.,* 152 *Ohio St.* 437, 89 *N.E.*2d 673 (1949) (employer recovered the excess cost of workers' compensation insurance premiums resulting from negligence by defendant to plaintiff's employee); *see also* Medical Care Recovery Act, 42 *U.S.C.* § 2651 (giving the federal government a right of recovery for medical care it must and has provided someone, particularly in the armed services, injured by a defendant's negligence).

damage, the court treated the tenant's and owner's claims separately; the tenant's claims were purely economic, stemming from the loss of use of its property right, as in the instant case. Further, the city had had notice of the leak since 1957 and should have known about it even earlier. Duty, breach and proximate cause were found to exist; the plaintiff-tenant recovered lost profits and expenses incurred during the shut-down. *See also J'Aire Corp. v. Gregory*, 24 *Cal*.3d 799, 157 *Cal.Rptr.* 407, 598 *P*.2d 60 (1979) (contractor who undertook construction work for owner of building had duty to tenants to complete construction on time to avoid resultant economic losses).

These exceptions expose the hopeless artificiality of the *per se* rule against recovery for purely economic losses. When the plaintiffs are reasonably foreseeable, the injury is directly and proximately caused by defendant's negligence, and liability can be limited fairly, courts have endeavored to create exceptions to allow recovery. The scope and number of exceptions, while independently justified on various grounds, have nonetheless created lasting doubt as to the wisdom of the *per se* rule of nonrecovery for purely economic losses.[4] Indeed, it has been

---

[4]The rationale has been proffered that negligently-caused economic losses are recoverable if they are part of the entire unit or complex of damages caused by an independent, threshold tort; nonrecoverable economic losses are damages that stand alone or apart from other damages suffered. *See* Prosser & Keeton, *supra*, § 129, at 997. This rationale, however, does not explain, for example, why economic losses stemming from an intentional, rather than negligent, interference with economic expectations are recoverable although there is no attendant physical harm and no independent, threshold tort. *See, e.g., Lumley v. Gye*, 118 *Eng.Rep.* 749 (Q.B.1853) (one who intentionally induced opera singer to dishonor contract was liable to theatre owner for lost profits). The notion that the defendant must have breached a duty *independent* of the negligent interference with economic expectations assumes that the defendant's negligence—fortuitously resulting only in economic losses—is not a tort. Whether the law recognizes the *injury* as compensable is a matter of policy; but clearly an "independent" tort has been committed, and no parasitic relationship with another tort should be required before determining whether the injury is compensable. Further, the rule-of-damages rationale does not explain why the application of concepts of duty and proximate cause, which

fashionable for commentators to state that the rule has been giving way for nearly fifty years, although the cases have not always kept pace with the hypothesis. *See* Harvey, "Economic Losses and Negligence, the Search for a Just Solution," 50 *Can.Bar.Rev.* 580 (1972); Harper, "Interference with Contractual Relations," 47 *Nw.U.L.Rev.* 873 (1953), in 1 F. Harper & F. James, *Torts,* § 6.5, at 490 (1956); Carpenter, *supra,* "Interference with Contractual Relations," 41 *Harv.L.Rev.* 728; Note, "Negligent Interference with Contract: Knowledge As a Standard for Recovery," 63 *Va.L.Rev.* 813 (1977); Note, "Negligent Interference with Economic Expectancy: The Case for Recovery," 16 *Stan.L.Rev.* 664 (1964); Comment, "Foreseeability of Third Party Economic Injuries—A Problem in Analysis," 20 *U.Chi.L.Rev.* 283 (1953).

One thematic motif that may be extrapolated from these decisions to differentiate between those cases in which recovery for economic losses was allowed and denied is that of foreseeability as it relates to both the duty owed and proximate cause. The traditional test of negligence is what a reasonably prudent person would foresee and do in the circumstances; duty is clearly defined by knowledge of the risk of harm or the reasonable apprehension of that risk. In the above-cited cases, the defendants knew or reasonably should have foreseen both that particular plaintiffs or an identifiable class of plaintiffs were at risk and that ascertainable economic damages would ensue from the conduct. Thus, knowledge or special reason to know of the consequences of the tortious conduct in terms of the persons likely to be victimized and the nature of the damages likely to be suffered will suffice to impose a duty upon the tortfeasor not to interfere with economic well-being of third parties. *See* W. Prosser, *supra, The Law of Torts* § 129, at 941 ("The limitation of specifically foreseeable plaintiffs ... sug-

---

serve negligence well in cases where the plaintiff is physically harmed, cannot function equally well in cases in which there has been no physical harm. *See supra* at 252–253.

gest[s] an ultimate solution to the problem" [of whether negligent interference with economic expectation absent physical harm should be compensable].).

The further theme that may be extracted from these decisions rests on the specificity and strictness that are infused into the definitional standard of foreseeability. The foreseeability standard that may be synthesized from these cases is one that posits liability in terms of where, along a spectrum ranging from the general to the particular, foreseeability is ultimately found. *See* W. Prosser, *supra*, *The Law of Torts* § 129, at 941; Note, *supra*, 63 *Va.L.Rev.* at 818; Comment, *supra*, 20 *U.Chi. L.Rev.* at 293. A broad view of these cases reasonably permits the conclusion that the extent of liability and degree of foreseeability stand in direct proportion to one another. The more particular is the foreseeability that economic loss will be suffered by the plaintiff as a result of defendant's negligence, the more just is it that liability be imposed and recovery allowed.

We hold therefore that a defendant owes a duty of care to take reasonable measures to avoid the risk of causing economic damages, aside from physical injury, to particular plaintiffs or plaintiffs comprising an identifiable class with respect to whom defendant knows or has reason to know are likely to suffer such damages from its conduct. A defendant failing to adhere to this duty of care may be found liable for such economic damages proximately caused by its breach of duty.

We stress that an identifiable class of plaintiffs is not simply a foreseeable class of plaintiffs. For example, members of the general public, or invitees such as sales and service persons at a particular plaintiff's business premises, or persons travelling on a highway near the scene of a negligently-caused accident, such as the one at bar, who are delayed in the conduct of their affairs and suffer varied economic losses, are certainly a foreseeable class of plaintiffs. Yet their presence within the area would be fortuitous, and the particular type of economic

injury that could be suffered by such persons would be hopelessly unpredictable and not realistically foreseeable. Thus, the class itself would not be sufficiently ascertainable. An identifiable class of plaintiffs must be particularly foreseeable in terms of the type of persons or entities comprising the class, the certainty or predictability of their presence, the approximate numbers of those in the class, as well as the type of economic expectations disrupted. *See Henry Clay v. Jersey City, supra,* 74 *N.J.Super.* at 497–501. *See also Strauss v. Belle Realty Co., supra,* 65 *N.Y.*2d 399, 492 *N.Y.S.*2d 555, 482 *N.E.*2d 34; (tenants of building harmed by utility blackout comprise defined, limited, known class).

We recognize that some cases will present circumstances that defy the categorization here devised to circumscribe a defendant's orbit of duty, limit otherwise boundless liability and define an identifiable class of plaintiffs that may recover. In these cases, the courts will be required to draw upon notions of fairness, common sense and morality to fix the line limiting liability as a matter of public policy, rather than an uncritical application of the principle of particular foreseeability. *See Rickards v. Sun Oil Co.,* 23 *N.J.Misc.* 89 (Sup.Ct.1945); *Byrd v. English, supra,* 117 *Ga.* 191, 43 *S.E.* 419.

## B.

Liability depends not only on the breach of a standard of care but also on a proximate causal relationship between the breach of the duty of care and resultant losses. Proximate or legal causation is that combination of " 'logic, common sense, justice, policy and precedent' " that fixes a point in a chain of events, some foreseeable and some unforeseeable, beyond which the law will bar recovery. *Caputzal v. Lindsay Co.,* 48 *N.J.* 69, 77–78 (1966), (quoting *Powers v. Standard Oil Co.,* 98 *N.J.L.* 730, 734 (Sup.Ct.1923), *aff'd o.b.,* 98 *N.J.L.* 893 (E. & A. 1923); *see also Palsgraf v. Long Island R.R., supra,* 248 *N.Y.* at 350, 162 *N.E.* at 103 (Andrews, J., dissenting). The standard of

particular foreseeability may be successfully employed to determine whether the economic injury was proximately caused, *i.e.*, whether the particular harm that occurred is compensable, just as it informs the question whether a duty exists. *See Hill v. Yaskin*, 75 *N.J.* 139, 143 (1977) (citing L. Green, *Rationale of Proximate Cause* 82–83 (1927)).

Although not expressly eschewing the general rule against recovery for purely economic losses, our courts have employed a traditional proximate cause analysis in order to decide whether particular claimants may survive motions for summary judgment. These cases embody a distinction between those economic losses that are only generally foreseeable, and thus non-compensable, and those losses the defendant is in a position particularly to foresee. In *Henry Clay v. Jersey City, supra,* 74 *N.J.Super.* 490 the court determined that the plaintiff-tenant's economic losses arising from the defendant city's failure to maintain its sewer line were directly and proximately caused by the defendant's negligence. There were no intervening causes, unlike *Kinsman Transit Co., supra,* 388 *F.*2d at 822.[5] The economic injury was close in time and space; the defendant had ample opportunity to ascertain the identity and nature of the plaintiff's interests. Further, the amount of litigation and extent of liability was finite, rather than expansive. These are the kinds of considerations that converge in the determination whether economic losses are particularly foreseeable and proximate.

---

[5]In *Kinsman*, the defendants' negligence caused a ship to break loose from her moorings and career down the narrow, S-shaped Buffalo River channel. She struck another ship, which in turn broke loose from her moorings and drifted downstream—followed by the first ship—until she crashed into a bridge. The bridge collapsed and its wreckage, together with the two ships, formed a dam, which caused extensive flooding and an ice jam reaching almost 3 miles upstream. · As a result of this disaster, transportation on the river was disrupted for a period of about two months. The plaintiff's grain shipments were delayed and substitute grain had to be obtained. 388 *F.*2d at 822–23. The resultant economic losses were deemed too remote to allow recovery. *Id.* at 824.

In two other cases, *Rickards v. Sun Oil Co., supra,* 23 *N.J.Misc.* 89 and *Dale v. Grant,* 34 *N.J.L.* 142 (Sup.Ct.1870), our courts again applied proximate cause principles to determine whether the plaintiffs could recover purely economic losses, and found that liability was unjustified. In *Rickards, supra,* the defendant's barge negligently destroyed a bridge that was the only means of access to six plaintiffs' retail businesses. In denying relief to these plaintiffs for recovery of "losses from expectant gains," 23 *N.J.Misc.* at 91, the court noted that principles of proximate cause applied to cases sounding in negligence and nuisance and that each case stood on its own facts. *See Rickards, supra,* 23 *N.J.Misc.* at 93. Recovery was denied because "[n]o ordinary prudent person could reasonably have been expected to have foreseen the resultant injurious consequences * * *." *Id.* at 95. This result may be explained in terms of the disproportionate extent of liability, which could not have been anticipated, and that the economic losses, while generally foreseeable, did not suffice to establish the requisite knowledge or particular foreseeability for recovery. In *Dale v. Grant, supra,* the court also applied traditional proximate cause principles to deny recovery to a plaintiff claiming lost profits. In that case, however, the interference with contractual relations was intentional, but that tort was not yet widely recognized as compensable. *See Dale, supra,* 34 *N.J.L.* at 149.

The particular-general foreseeability axis is also accordant with the policies underlying tort law. For good reason, tortfeasors are liable only for the results falling within the foreseeable risks of their negligent conduct. Assigning liability for harm that fortuitously extends beyond the foreseeable risk of negligent conduct unfairly punishes the tortfeasor for harm that he could not have anticipated and taken precautions to avoid. This comports with an underlying policy of the negligence doctrine: the imposition of liability should deter negligent conduct by creating incentives to minimize the risks and costs of accidents. *See* Note, *supra,* 63 *Va.L.Rev.* at 815. The

imposition of liability for unforeseeable risks cannot serve to deter the conduct that has eventuated in attenuated results, but instead arbitrarily assigns liability unrelated or out of proportion to the defendant's fault. If negligence is the failure to take precautions that cost less than the damage wrought by the ensuing accident, *see United States v. Carroll Towing Co.*, 159 *F.*2d 169, 173, reh. den., 160 *F.*2d 482 (2d Cir.1947), it would be unfair and socially inefficient to assign liability for harm that no reasonably-undertaken precaution could have avoided. *Cf. Soler v. Castmaster, Div. of H.P.M. Corp., supra,* 98 *N.J.* 137; *Brown v. United States Stove Co.*, 98 *N.J.* 155 (1984); *Campos v. Firestone Tire & Rubber Co.*, 98 *N.J.* 198 (1984) (employing objective-subjective foreseeability in product liability context).

We conclude therefore that a defendant who has breached his duty of care to avoid the risk of economic injury to particularly foreseeable plaintiffs may be held liable for actual economic losses that are proximately caused by its breach of duty. In this context, those economic losses are recoverable as damages when they are the natural and probable consequence of a defendant's negligence in the sense that they are reasonably to be anticipated in view of defendant's capacity to have foreseen that the particular plaintiff or identifiable class of plaintiffs, as defined *infra* at 263–64, is demonstrably within the risk created by defendant's negligence.

### III.

We are satisfied that our holding today is fully applicable to the facts that we have considered on this appeal. Plaintiff has set forth a cause of action under our decision, and it is entitled to have the matter proceed to a plenary trial. Among the facts that persuade us that a cause of action has been established is the close proximity of the North Terminal and People Express Airlines to the Conrail freight yard; the obvious nature of the plaintiff's operations and particular foreseeability of economic losses resulting from an accident and evacuation; the defendants' actual or constructive knowledge of the

volatile properties of ethylene oxide; and the existence of an emergency response plan prepared by some of the defendants (alluded to in the course of oral argument), which apparently called for the nearby area to be evacuated to avoid the risk of harm in case of an explosion. We do not mean to suggest by our recitation of these facts that actual knowledge of the eventual economic losses is necessary to the cause of action; rather, particular foreseeability will suffice. The plaintiff still faces a difficult task in proving damages, particularly lost profits, to the degree of certainty required in other negligence cases. The trial court's examination of these proofs must be exacting to ensure that damages recovered are those reasonably to have been anticipated in view of the defendants' capacity to have foreseen that this particular plaintiff was within the risk created by their negligence.

We appreciate that there will arise many similar cases that cannot be resolved by our decision today. The cause of action we recognize, however, is one that most appropriately should be allowed to evolve on a case-by-case basis in the context of actual adjudications. *See Merenoff v. Merenoff, supra,* 76 *N.J.* at 557. We perceive no reason, however, why our decision today should be applied only prospectively. *See Darrow v. Hanover Tp.,* 58 *N.J.* 410, 415 (1971). Our holdings are well grounded in traditional tort principles and flow from well-established exceptional cases that are philosophically compatible with this decision. *See Cogliati v. Ecco High Frequency Corp.,* 92 *N.J.* 402, 415–16 (1983); *Mirza v. Filmore Corp.,* 92 *N.J.* 390, 398 (1983).

Accordingly, the judgment of the Appellate Division is modified, and, as modified, affirmed. The case is remanded for proceedings consistent with this opinion.

*For modification and affirmance* —Chief Justice WILENTZ, and Justices CLIFFORD, HANDLER, O'HERN, GARIBALDI and STEIN—6.

*For reversal*—None.