243 N.J. Super. 44 (1990)
578 A.2d 402
GLASS, MOLDERS, POTTERY, PLASTICS AND ALLIED WORKERS INTERNATIONAL UNION, AFL-CIO, ET AL., PLAINTIFFS,
v.
WICKES COMPANIES, INC., DEFENDANT.
Superior Court of New Jersey, Law Division Camden County.
Decided March 23, 1990.
*46 Justin T. Loughry for plaintiffs (Tomar, Simonoff, Adourian & O'Brien, attorneys).
Allan Kanner for plaintiffs.
John P. Hauch, Jr. for defendant (Archer & Greiner, attorneys).
DROZDOWSKI, J.S.C.
This is defendant Wickes' motion to dismiss the complaint under R. 4:6-2(e) for failure to state a claim. Plaintiffs, an alleged class of present and former employees of Owens-Corning Fiberglass, Inc. (O.C.F.), and their union sue defendant Wickes seeking to recover compensatory and punitive damages as a result of defendant's allegedly hostile and illegal takeover attempt of O.C.F. which unlawfully and without justification interfered with certain prospective economic advantages enjoyed by plaintiffs. The first count of the complaint is for unlawful interference with prospective economic advantage and the second count is grounded in negligence.
Defendant Wickes moves to strike, stating that dismissal of the complaint is mandated because: (1) the cause of action is preempted by federal law, (2) this cause of action is barred because of conflict with the Commerce Clause of the United States Constitution, and (3) plaintiffs have failed to state a claim upon which relief can be granted under New Jersey law.
This is a case of first impression in New Jersey. However, as Judge Conford stated in DiCristofaro v. Laurel Grove Memorial Park, 43 N.J. Super. 244, 128 A.2d 281 (App.Div. 1957): "The novelty of a specific occasion for application of a principle in this field is no reason for according it a chilly reception."
The test for determining the adequacy of a pleading is whether a cause of action is suggested by the facts. We should search the complaint in depth, and with liberality, to determine whether the fundament of a cause of action may be gleaned *47 even from an obscure statement of claim, an opportunity being given to amend if necessary. This court is not concerned with the ability of plaintiffs to prove the allegations in the complaint. The examination should be painstaking and undertaken with a generous and hospitable approach. The New Jersey Supreme Court in Printing Mart-Morristown v. Sharp Electronics Corp., 116 N.J. 739, 563 A.2d 31 (1989), advises trial judges to approach this type of motion with great caution. Since such a motion is brought at the earliest stage of the litigation, it should prevail in only the rarest of situations.

Failure to State a Claim on Which Relief can be Granted.
I find that plaintiffs have, at the least, suggested facts which can bring relief under the cause of action "intentional and/or tortious interference" with a prospective economic relationship. Dealing with the four elements of a properly pleaded complaint as set forth in Printing Mart, I find as follows.
1. Plaintiffs have alleged facts showing some protectable right, a prospective economic relationship. For example, paragraph 4(c) of the complaint alleges that plaintiffs had a reasonable, quantifiable economic advantage and benefit in their jobs, salary and benefits. This gives rise to some reasonable expectation of economic advantage.
2. The complaint has at least suggested facts claiming that the interference was done intentionally and with malice-malice defined to mean the interference was done intentionally and without justification or excuse. Plaintiffs allege facts showing that defendant Wickes attempted a hostile takeover of O.C.F.; that defendant intentionally violated federal laws and regulations in making certain purchases of O.C.F. stock without the required reporting and waiting period; that this intentional and illegal process was taken with the knowledge of plaintiff's relationship and interest with O.C.F. and that this intentional, *48 illicit process would certainly cause harm to the existing future economic advantage plaintiffs have with O.C.F.
3. Plaintiffs have, at the least, suggested facts leading to the conclusion that the interference caused the loss of prospective gain. Additionally, they have alleged that O.C.F. was a leader in everything from home insulation to the manufacture of building materials for pleasure boat hulls and that, without the tortious interference, there was a reasonable probability that plaintiffs would have retained their future economic advantage.
4. Plaintiffs have alleged facts showing they have suffered actual damages as a result of Wickes' tortious interference.
Does the first count, dealing with the alleged negligence of defendant Wickes, state a claim upon which relief can be granted? Defendant Wickes argues that plaintiffs have failed because, first, defendant owed no duty to plaintiffs and, second, there is no "proximate cause," i.e., the ultimate consequence of the negligence act was so remote that there can be no recovery.
Plaintiffs reply by citing Justice Handler's opinion in People Express Airlines, Inc. v. Consolidated Rail Corp., 100 N.J. 246, 495 A.2d 107 (1985):
... [a] defendant owes a duty of care to take reasonable measures to avoid the risk of causing economic damages, aside from physical injury, to particular plaintiffs or plaintiffs comprising an identifiable class with respect to whom defendant knows or has reason to know are likely to suffer such damages from its conduct. A defendant failing to adhere to this duty of care may be found liable for such economic damages proximately caused by its breach of duty. [At 263, 495 A.2d 107]
Plaintiffs allege that defendant had a common-law duty to exercise "ordinary care not to injure" O.C.F. workers, that it was foreseeable that these workers would be injured, and that the violation of this duty proximately produced the economic damage.
I find that plaintiffs have factually suggested a cause of action in negligence. Since this motion is brought at the earliest stage of the litigation, and such motions, at this stage, *49 should be granted in only the rarest of instances, I find this an inappropriate time to dismiss this count.

Preemption.
Under the Supremacy Clause, federal law may supersede state law in several ways.
1. Congress may preempt state law by stating its intention in expressed terms. Defendant Wickes concedes that express preemption is not applicable.
2. Where express preemption cannot be found, Congress' intent to preempt state law may be inferred where the scheme of federal regulation is so comprehensive that it is reasonable to conclude congressional intent to regulate the field to the exclusion of state regulation.
3. Even where Congress has not completely displaced state regulation in a specific area, state law is nullified to the extent that it actually conflicts with the federal law. Such a conflict arises when compliance with both federal and state regulations is a physical impossibility.
Here the preemption issue arises in the context of a claim that the Williams Act, 15 U.S.C.A. §§ 78m(d, e), 78n(d-f) preempts the state common law claims asserted by plaintiff. There is no question that common law is as susceptible of preemption as are state statutes and regulations. However, there remains a presumption against preemption of state law, including state common law, in particular, since such common law is often the result of generations of judicial development, and more important, concerns areas traditionally regarded as within the scope of state superintendence. Torts such as those alleged here are precisely the sort of legal action that fall within the scope of a state's historical and typical powers. The presumption against preemption of this cause of action is strengthened where preemption would leave a plaintiff without an adequate remedy for violation of a state-created right.
*50 Plaintiff's complaint in tort alleges unlawful interference and negligence and seeks both compensatory and punitive compensation. Factually, plaintiffs claim that Wickes and others acquired an aggregate number of voting securities in O.C.F. worth in excess of $15 million, in violation of the Hart-Scott-Rodino Antitrust Improvements Act, 15 U.S.C.A. § 18a, and its authorized regulations. Under the act and regulations, plaintiffs allege that Wickes violated the reporting and waiting period requirements before making the acquisitions. This violation, in plaintiffs' view, was a proximate cause of O.C.F. workers' loss and downgrading of jobs.
Wickes states that the Williams Act, which is the primary statute governing takeover activity, was intended by Congress to insure an "even-handedness" in takeover battles with which states may not interfere. This is a "careful balance struck by Congress" which, according to Wickes, states cannot upset.
Did Congress intend to regulate and occupy the field to such an extent that state regulation is totally excluded?
I find no evidence of such total federal regulation. In fact, 15 U.S.C.A. § 78bb states:
The rights and remedies provided by this chapter shall be in addition to any and all other rights and remedies that may exist at law or in equity, but no person permitted to maintain a suit for damages under the provisions of this chapter shall recover through satisfaction of judgment in one or more actions, a total amount in excess of his actual damages on account of the act complained of. Nothing in this chapter shall affect the jurisdiction of the Securities Commission (or any agency or officer performing like functions) of any State over any security or any person insofar as it does not conflict with the provisions of this chapter or the rules and regulations thereunder.
In Amanda Acquisition Corporation v. Universal Foods, 877 F.2d 496 (7 Cir.1989), Circuit Judge Easterbrook found that Wisconsin's law which would have made tender offers unattractive to many potential bidders, was not preempted by the Williams Act. He found that Congress did not intend to totally exclude state regulation by § 28(a) of the 1934 act, 15 U.S.C.A. § 78b(a). Additionally, he cited the traditional reluctance of federal courts to infer preemption of "[s]tate law in areas *51 traditionally regulated by the States," i.e., states have regulated corporate affairs including mergers and sales of assets since before the beginning of the nation. Here, as in Amanda, I find that Congress, in establishing the Williams Act, desired neutrality between bidder and management but did not intend to totally exclude state regulation.
Next, does New Jersey common law so conflict with federal regulation that it is a physical impossibility to comply with both the federal regulation and the state common law? Would a verdict of money damages against Wickes for failing to comply with federal regulations conflict with the federal regulations which require compliance? The answer to both questions is no.
Here, plaintiffs sue for money damages alleging Wickes deliberately violated the federal law which governs the process of tender offers. For purposes of this motion, this allegation is taken as true. If Wickes, on the other hand, had complied with reporting and waiting period requirements of federal regulation, and then was sued for money damages alleging this compliance was improper or inadequate under New Jersey common law, the New Jersey common law would then be preempted because of the conflict created between the state common law and federal law. Under the last example, Wickes would find it an impossibility to comply with both the federal law and the New Jersey common law. Here, a New Jersey jury, in order to award damages, will not require more of Wickes than will the federal government.

Commerce Clause.
Wickes alleges that New Jersey common-law tort claims against tender offerors would unduly burden interstate commerce and would subject tender offerors to inconsistent regulation of interstate commerce. Does New Jersey common-law tort law, in the context of the facts of this case where the out-of-state tender offeror has violated federal regulations dealing with disclosure, so unduly burden interstate commerce that *52 it is preempted or vitiated? I find no evidence that interstate commerce is unduly burdened.
The common law does not forbid interstate transactions and does not regulate interstate transactions. Here, if there is any regulation dealing with offerors who violated federal regulations dealing with the disclosure, the state common law does not discriminate against tender offerors because of residence. Nothing in the state cause of action would place a burden on an out-of-state offeror that does not apply to New Jersey offerors.
In sum, the payment of compensation to injured workmen and their union by out-of-state tender offerors who injured them by noncompliance with federal regulation dealing with disclosures does not violate the Commerce Clause, either as unduly burdensome or in creating inconsistent regulation.
Motion denied.