**PARAMOUNT AVIATION CORPORATION,**
Appellant,

v.

Gruppo **AGUSTA, Agusta Aerospace Corporation, Costruzioni Aeronautiche Giovanni Agusta, S.p.A. and Agusta, S.p.A.,**

Nos. 04–1015, 04–1137.

United States Court of Appeals, Third Circuit.

Argued Nov. 16, 2004.

Decided Feb. 15, 2005.

Arthur A. Wolk, Christopher J. Cerski, (Argued), The Wolk' Law Firm, Philadelphia, PA, for Appellant.

Rudolph V. Pino, Jr., (Argued), Pino & Associates, Westchester Financial Center, White Plains, NY, John R. Altieri, Hackensack, NJ, for Appellees.

Before McKEE and CHERTOFF, Circuit Judges and BUCKWALTER, Senior District Judge.*

## OPINION

BUCKWALTER, Senior District Judge.

This case returns to this court after having been remanded to the United States District Court for the District of New Jersey on May 1, 2002 for further proceedings as follows:

> The District Court should address on remand whether economic loss alone is ever recoverable under the strict liability of New Jersey and, if so, whether the causal nexus between the defect and the alleged losses here is too attenuated to permit recovery in strict liability here.
>
> (Appendix 0944, Opinion of the Court filed May 1, 2002).

---

* Honorable Ronald L. Buckwalter, Senior District Judge for the Eastern District of Pennsylvania, sitting by designation.

The District Court pursuant to the remand, first of all, predicted "that the New Jersey Supreme Court would hold that in the situation presented here, where the U.C.C. does not apply and the damage is not to the defective product itself but rather a breach of the duty not to put the defective product into the stream of commerce, economic losses may be recoverable under a theory of strict liability." (App. 0031, Opinion of District Court filed 12/16/03).

Secondly, the District Court concluded "that Agusta owed no duty to Paramount and that the proximate causal relationship between the alleged breach of duty by Agusta and resultant losses suffered by Paramount was too attenuated to permit recovery." (App. 0039, Opinion of District Court filed 12/16/03).

Paramount filed this appeal, arguing only the following issues:

(1) the record evidences a relationship between the parties, which establishes the requisite particular foreseeability to create a duty and proximate cause; and

(2) the district court misapplied the teaching of *People Express Airlines, Inc. v. Consolidated Rail Corp.*, 100 N.J. [216,] 263, 495 A.2d [107,] 116 (1985).

Agusta argues that the District Court properly applied the teachings of *People Express, supra,* finding Paramount is precluded from proceeding on the theory of negligence when no duty is owed and when the proximate causal relationship between the alleged breach of duty and resultant losses suffered are too attenuated to permit recovery.

Because we find that the record does not provide evidence of a relationship which would establish the requisite particular foreseeability necessary to create a duty owed by Paramount to Agusta, we would affirm the order of the District Court granting summary judgment in favor of Agusta.

The facts relied upon by Paramount to establish the requisite foreseeability necessary to create a duty are set forth in the statement of facts in Appellant's initial brief as follows:

On October 10, 1989, an Agusta 109A helicopter bearing aircraft registration number N21FL crashed in Lacey Township, New Jersey, killing both pilots and the three passengers, who were executives of the Trump Organization. (App.62). The helicopter was destroyed as well. (App. 62).

The helicopter was manufactured and sold by Costruzioni Aeronautiche Giovanni Agusta S.p.A., a subsidiary of Agusta S.p.A. and part of Gruppo Agusta, which does business in this country through its wholly-owned American subsidiary, Agusta Aerospace Corporation, of Philadelphia, Pennsylvania. (App. 63–64). In addition, Agusta Aerospace Corporation operated a maintenance facility licensed by the Federal Aviation Administration (FAA), and provided aircraft maintenance services pursuant to Part 43 of the Federal Aviation Regulations (FARs), 14 C.F.R. pt. 43. (App. 396).

The helicopter was owned by FSQ Air Charter Corporation (FSQ), a New York corporation. (App. 66). Paramount managed N21FL, and supplied and paid one of the two pilots who flew the helicopter, under a "Management Agreement" with FSQ. (App. 66–67).

Paramount was a New Jersey corporation based in Lincoln Park, New Jersey. (App. 62). Prior to the accident, Paramount had a number of contracts with various corporations to manage their aircraft or transport their execu-

tives. (App. 62–63). Paramount also provided helicopter charter services pursuant to Part 135 of the FARs, 14 C.F.R. pt. 135, to business executives and corporations in the New York and Philadelphia metropolitan areas, and the accident helicopter was operated under its Part 135 certificate. (App. 62–63).

The cause of the crash was the failure of one of the four main rotor blades. (App. 329). The blade failure was the result of metal fatigue initiating at the inner surface of the lower portion of the spar. (App. 329). The fatigue failure was precipitated by the presence of a manufacturing-induced gouge, the gouge having been produced by the edge of the hard tool while trying to remove excessive adhesive "squeeze out" following the bonding of the tuning weight to the aluminum spar with an adhesive. (App. 329; 339).

This particular helicopter had a history of vibration. Agusta Aerospace had several occasions to address the problem of rotor system vibration, a sign that something catastrophic is about to occur, yet did not effect proper troubleshooting techniques, in total disregard for the airworthiness of the helicopter and the safety of its occupants. (App. 330–331).

Left out of Paramount's statement of facts but set forth in its argument is the aircraft lease agreement entered into between Agusta and Paramount dated November 14, 1991, about two and a half years after the Aircraft Management Agreement of June 19, 1989 and, more significantly, two years after the tragic helicopter crash. This agreement, according to the declaration of Paramount's president, made Paramount "the vehicle for exposing Agusta helicopter to the New York/Metropolitan area." (App. 1033). This, Paramount argues, created a symbiotic relationship between Paramount and Agusta, so that it was error for the District Court to conclude that Agusta had no knowledge of Paramount's business and could not foresee that the crash of an Agusta helicopter would impact Paramount. But, at the time of the accident, October 10, 1989, there is no evidence that Agusta had any relationship with Paramount other than Paramount happened to have entered into an agreement with FSQ Air Charter Corp., the owner of the Agusta 109 helicopter involved in the accident to manage FSQ's helicopter which included providing assistance and direction to FSQ in the preparation of an "Aircraft Program." This agreement never mentioned Agusta other than as the name of the helicopter.

Paramount has pointed to no facts, pre-accident, to show any kind of relationship between itself and Agusta.[1]

My reading of *People Express* in light of the facts of this case leads to the conclusion that the requisite foreseeability to create a duty on the part of Agusta does not exist here.

*People Express* begins by discussing what the court called "a virtually per se rule barring recovery for economic loss unless the negligent conduct also caused physical harm" and went on to explore

---

1. The appendix in this case (0090) does show a lease agreement entered into between Paramount and Agusta on March 20, 1987. Unlike the November 14, 1991 Aircraft Lease, this was a plain lease, providing for the return of the Agusta 109A II at the termination of the lease or any extensions thereto. The 11/14/91 lease provided, among other things, for a commission to Paramount if the aircraft was sold during the term of the lease as a result of sales efforts by Paramount. The Lessor in the 1987 lease was Agusta Aviation Corporation, while the Lessor in the 1991 lease was the present defendant, Agusta Aerospace Corporation.

what it stated to be "the troublesome concern reflected in cases denying recovery for negligently-caused economic loss as being ... the alleged potential for infinite liability, or liability out of all proportion to defendant's fault."

The Court then went on to say later in its opinion that "judicial reluctance to allow recovery for purely economic losses is discordant with contemporary tort doctrine."

Stating that ultimately, the judiciary has had "discomfiture" with the nonrecovery rule for purely economic losses, the Court found numerous exceptions to it.

Two common threads run throughout those exceptions:

> "The first is that the element of foreseeability emerges as a more appropriate analytical standard to determine the question of liability than a per se prohibiting rule.

> The second is the extent to which the defendant knew of or should have known the particular consequences of his negligence, including the economic loss of a particularly foreseeable plaintiff."

It is important to note that the *People Express* court ultimately held as follows:

> We hold therefore that a defendant owes a duty of care to take reasonable measures to avoid the risk of causing economic damages, aside from physical injury, to particular plaintiffs or plaintiffs comprising an identifiable class with respect to whom defendant knows or has reason to know are likely to suffer such damages from its conduct. A defendant failing to adhere to this duty of care may be found liable for such economic damages proximately caused by its breach of duty.

It went on to define an identifiable class as follows:

> An identifiable class of plaintiffs must be particularly foreseeable in terms of the type of persons or entities comprising the class, the certainty or predictability of their presence, the approximate numbers of those in the class, as well as the type of economic expectations disrupted. (Citations omitted).

And finally, the Court said:

> We recognize that some cases will present circumstances that defy the categorization here devised to circumscribe a defendant's orbit of duty, limit otherwise boundless liability and define an identifiable class of plaintiffs that may recover. In these cases, the courts will be required to draw upon notions of fairness, common sense and morality to fix the line limiting liability as a matter of public policy, rather than an uncritical application of the principle of particular foreseeability. Liability depends not only on the breach of a standard of care but also on a proximate causal relationship between the breach of the duty of care and resultant losses. Proximate or legal causation is that combination of "logic, common sense, justice, policy and precedent" that fixes a point in a chain of events, some foreseeable and some unforeseeable, beyond which the law will bar recovery. (Citations omitted).

The question based on the facts of this case is, was Paramount at the time of the accident particularly foreseeable in terms of the type of entity comprising the class, the certainty or predictability of its presence, the approximate number of those in Paramount's class as well as the type of economic expectations disrupted.

The answer must be that Paramount was not particularly foreseeable[2] (1) as a particular type of entity which, at the time of the accident, simply provided management services to a helicopter owned by a purchaser of an Agusta helicopter; (2) as an entity whose presence as the management services provider was certain or even predictable; (3) as an entity, the number of which is known (on this record, the number of entities is totally unknown); and (4) as an entity whose economic expectation would be disrupted in the manner it claims.

We would affirm the decision of the U.S. District Court.

## CHERTOFF, Circuit Judge, dissenting.

The Majority holds today that the District Court was correct in granting summary judgment in favor of Agusta based on the finding that the record does not provide sufficient evidence for a jury to find a relationship that satisfies the foreseeability test discussed in *People Express Airlines, Inc. v. Consolidated Rail Corp.*, 100 N.J. 246, 495 A.2d 107 (1985). For the reasons stated below, I respectfully disagree.

*People Express* held that the standard for determining whether a particular class of plaintiffs may recover for economic damages is whether the class is "particularly foreseeable in terms of the type of persons or entities comprising the class, the certainty or predictability of their presence, the approximate numbers of those in the class, as well as the type of economic expectations disrupted." *Id.* at 116. "To prevail on a motion for summary judgment, the moving party must demonstrate that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Hotel Employees & Restaurant Employees Union, Local 57 v. Sage Hospi-*

---

2. The facts and rationale in *People Express*, in contrast, clearly meet the foreseeability test. They are:

On July 22, 1981, a fire began in the Port Newark freight yard of defendant Consolidated Rail Corporation (Conrail) when ethylene oxide manufactured by defendant BASF Wyandotte Company (BASF) escaped from a tank car, punctured during a "coupling" operation with another rail car, and ignited. The tank car was owned by defendant Union Tank Car Company (Union Car) and was leased to defendant BASF.

The plaintiff asserted at oral argument that at least some of the defendants were aware from prior experiences that ethylene oxide is a highly volatile substance; further, that emergency response plans in case of an accident had been prepared. When the fire occurred that gave rise to this lawsuit, some of the defendants' consultants helped determine how much of the surrounding area to evacuate. The municipal authorities then evacuated the area within a one-mile radius surrounding the fire to lessen the risk to persons within the area should the burning tank car explode. The evacuation area in-

cluded the adjacent North Terminal building of Newark International Airport, where plaintiff People Express Airlines' (People Express) business operations are based. Although the feared explosion never occurred, People Express employees were prohibited from using the North Terminal for twelve hours.

Among the facts that persuade us that a cause of action has been established is the close proximity of the North Terminal and People Express Airlines to the Conrail freight yard; the obvious nature of the plaintiff's operations and particular foreseeability of economic losses resulting from an accident and evacuation; the defendants' actual or constructive knowledge of the volatile properties of ethylene oxide; and the existence of an emergency response plan prepared by some of the defendants (alluded to in the course of oral argument) which apparently called for the nearby area to be evacuated to avoid the risk of harm in case of an explosion. We do not mean to suggest by our recitation of theses facts that actual knowledge of the eventual economic losses is necessary to the cause of action; rather, particular foreseeability will suffice.

*tality Resources, LLC*, 390 F.3d 206, 210 (3d Cir.2004) (quotation marks omitted). At this stage, therefore, Paramount is entitled to a trial if there is an issue of fact about whether the Paramount–Agusta relationship gave rise to a foreseeability of economic loss.

In essence, the Majority finds an insufficient relationship because it views Paramount as no more than the manager of a crashed Agusta helicopter leased to a third party. But the record shows at least three elements of evidence that support finding a stronger relationship between Paramount and Agusta that may meet the test of particular foreseeability defined in *People Express*.

First, the declaration of Alfred E. Bartone, President of Paramount, describes an ongoing brokerage arrangement between Agusta and Paramount. Under that arrangement, Paramount sold leases of Agusta helicopters and received further compensation for any Agusta helicopter ultimately purchased by the customer. (App.1031–32.)

Second, Paramount's supplemental expert witness affidavit, states that:

Paramount had an ongoing business relationship with Agusta and had had business dealings with Agusta for a number of years. Paramount operated several Agusta helicopters at the time of the accident. Paramount received commissions from Agusta for setting up the lease of helicopters to others such as AT & T. Paramount received goods and services from Agusta, including aircraft maintenance.

(App. 327.)

If true, these proofs suggest a continuing economic relationship that might well satisfy *People Express*. And although neither the declaration nor witness affidavit expressly states to what extent the economic relationship between Paramount and Agusta existed before the helicopter crash, in both instances it is at least reasonable to infer that the evidence refers to an ongoing relationship before the accident that grounded the Agusta fleet. In any event, any uncertainty of the time frame at least creates a genuine issue of material fact as to whether a relationship sufficient to establish particular foreseeability existed between Paramount and Agusta before the accident.

Finally, in the transcript of summary judgment proceedings on February 5, 2001, John Altieri, lawyer for Agusta quite clearly represents that:

And you can see repeated in the Plaintiff's papers that he was proud to be our representative and made a great point to say that everybody knew he was our, the Defendants', representative in the northeast. And I think that the benefit of that was, he had a working relationship with us, and from that, he derived income from the sale of any helicopters, the leasing of any helicopters; and, in particular, even with the helicopter involved in this unfortunate crash, he held himself out as our representative and thus was able to get the contract with FSQ, the owner.

(App. 524–25.) This representation might well support application of the *People Express* doctrine. Although the context in which Altieri made this argument on behalf of Agusta is different than the current context, statements made by counsel in the course of litigation are generally admissible against a client, if authorized within the scope of the legal representation.[3] *See*

---

**3.** At that time Agusta was arguing that Paramount's economic relationship with Agusta

meant that its economic damages were preempted by the UCC. (App. 605.) As a

*Lightning Lube Inc. v. Witco Corp.*, 4 F.3d 1153, 1198 (3d Cir.1993); *Hanson v. Waller*, 888 F.2d 806, 814 (11th Cir.1989).

Accordingly, I believe that there is a sufficient issue of genuine fact with respect to the issue of foreseeability, and would therefore reverse and remand.

result, it was in Agusta's best interest to emphasize the robust commercial relationship between the two parties. After the Third Circuit held in *Paramount Aviation Corp. v. Gruppo Agusta*, 288 F.3d 67 (3d Cir.2002), that the UCC would not preclude Paramount from proceeding on a strict liability/negligence theory, however, it became in Agusta's interest to downplay its relationship with Paramount in order to demonstrate a lack of foreseeability. Of course Agusta cannot retract its statement admission because it is no longer helpful in the present context of the case.