USCA1 Opinion

 

 August 23, 1994 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ____________________ No. 94-1059 IN RE BALLARD SHIPPING COMPANY, ETC., Plaintiff, Appellee, v. BEACH SHELLFISH, ET AL., Claimants, Appellants. ____________________ ERRATA SHEET Block quote on page 5: line 3, change "tort-feasor" to "tortfeasor". On line 5, add a comma between "other" and "unknown". Page 5, 3 lines below block quote: "MT Fadi B" should be MT _________ __ FADI B". ______ Page 8, lines 2 and 3 down: change cite to "See R.I. Gen. ___ Laws 46-12.3-2, 46-12.3-3." Page 13, 5th line down: change cite to "State of Louisiana __________________ ex rel. Guste v. M/V Testbank, 752 F.2d 1019, 1022 (5th Cir. ______________ _____________ 1985) (en banc), cert. denied, 477 U.S. 903 (1986)." ____________ Page 16, second to last line of second paragraph: change "Id." to "Id." __ ___ Page 18, footnote 5, 5th line up: change period after "Fireman's Fund Ins. Co.." to a comma. _______________________ Page 20, footnote 20, second to last line: "Rule" should not be underlined. UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ____________________ No. 94-1059 IN RE BALLARD SHIPPING COMPANY, ETC., Plaintiff, Appellee, v. BEACH SHELLFISH, ET AL., Claimants, Appellants. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF RHODE ISLAND [Hon. Ronald R. Lagueux, U.S. District Judge] ___________________ ____________________ Before Selya, Circuit Judge, _____________ Bownes, Senior Circuit Judge, ____________________ and Boudin, Circuit Judge. _____________ ____________________ Thomas M. Bond with whom David B. Kaplan and The Kaplan/Bond _______________ _________________ _______________ Group were on brief for appellants. _____ John J. Finn with whom Thomas H. Walsh, Jr., Marianne Meacham and ____________ ____________________ ________________ Bingham, Dana & Gould were on brief for appellee. _____________________ ____________________ August 18, 1994 ____________________ BOUDIN, Circuit Judge. This appeal presents the ______________ question whether federal maritime law preempts Rhode Island legislation affording expanded state-law remedies for oil pollution damage. In an able opinion, the district court held that the remedies were preempted. Discerning the law in this area is far from easy; one might tack a sailboat into a fog bank with more confidence. Yet guided in part by an important Supreme Court decision rendered after the district court's decision, we are constrained to reverse in part and to remand for further proceedings. The basic facts of the case are not in dispute. On June 23, 1989, the M/V World Prodigy, an oil tanker owned by Ballard Shipping Co., ran aground in Narragansett Bay, Rhode Island, spilling over 300,000 gallons of heating oil into the bay. The wreck occurred when the ship strayed from the designated shipping channel and collided with a rock near Brenton Reef, about a mile south of Newport at the mouth of the bay. The oil slick prompted the State of Rhode Island to close Narragansett Bay to all shellfishing activities for a period of two weeks during and after cleanup operations. State authorities charged the captain of the ship with entering the bay without a local pilot on board in violation of state law. Both the captain and Ballard also pleaded guilty to criminal violations of the Federal Water Pollution Control Act, see 33 U.S.C. 1319(c). The captain and owner ___ -2- -2- were fined a total of $30,500 and $500,000, respectively. In addition, Ballard agreed to pay $3.9 million in compensation for federal cleanup costs, $4.7 million for state cleanup costs and damage to natural resources, $500,000 of which was to be available to compensate individuals, and $550,000 to settle claims for lost wages by local shellfishermen. A number of claimants filed suit against Ballard in Rhode Island. Ballard responded on December 22, 1989, by bringing a petition in admiralty for limitation or exoneration from liability. 46 U.S.C. 185. "[T]he court of admiralty in [a limitation of liability] proceeding acquires the right to marshal all claims, whether of strictly admiralty origin or not, and to give effect to them by the apportionment of the res and by judgment in personam against ___ ___________ the owner, so far as the court may decree." Just v. Chambers, ____ ________ 312 U.S. 383, 386 (1941). In the present case, several claimants reasserted their claims in the admiralty action. The claimants in the present appeal are a group of shellfish dealers who allege severe economic losses arising from the two-week hiatus in shellfishing activities, which suspended their operations during the busiest time of the shellfishing season. They alleged negligence under the general maritime law and the common law of Rhode Island, as well as a claim for economic losses pursuant to the Rhode Island Environmental Injury Compensation Act, R.I. Gen. Laws -3- -3- ch. 46-12.3 et seq. ("the Compensation Act"). _______ On June 17, 1992, Ballard moved to dismiss the shellfish dealers' claims on the basis of the Supreme Court's decision in Robins Dry Dock & Repair Co. v. Flint, 275 U.S. 303 _______________________________ _____ (1927), which held that compensation for economic losses standing alone is unavailable in admiralty cases. The district court granted the motion, holding that Robins ______ preempted the contrary provisions of the state's Compensation Act, which expressly provides for recovery of purely economic losses arising from an oil spill. In re Complaint of Ballard __________________________ Shipping Co., 810 F. Supp. 359 (D.R.I. 1993). The dealers _____________ now appeal from that dismissal. We first address the federal claims brought under the general maritime law. The Constitution grants the federal courts authority to hear "all Cases of admiralty and maritime Jurisdiction." U.S. Const. Art. III, 2. The parties agree that the dealers' federal claims fall within this group because the spill occurred on navigable waters and arose out of traditional maritime activity. See Executive Jet ___ _______________ Aviation, Inc. v. City of Cleveland, 409 U.S. 249 (1972). ______________ __________________ Admiralty jurisdiction brings with it a body of federal jurisprudence, largely uncodified, known as maritime law. See East River S.S. Corp. v. Transamerica Delaval, 476 U.S. ___ ______________________ _____________________ 858, 864 (1985). The dealers assert that their businesses were injured -4- -4- when the World Prodigy spill prevented local fishermen from harvesting shellfish in Narragansett Bay and thereby precluded the dealers from purchasing the shellfish and reselling them to restaurants and other buyers. The dealers' maritime-law claims are thus purely for economic losses, unaccompanied by any physical injury to their property or person. Those federal claims, as the district court held, are squarely foreclosed by Robins Dry Dock & Repair Co. v. ______________________________ Flint, 275 U.S. 303 (1927). _____ In Robins, the charterer of a vessel sued a repair ______ company that negligently damaged the vessel while it was in dry dock, alleging that the resulting delay caused the charterer to lose profits that it would have otherwise derived from the use of the ship. Justice Holmes wrote for the Court in holding that the suit could not be maintained: [N]o authority need be cited to show that, as a general rule, at least, a tort to the person or property of one man does not make the tortfeasor liable to another merely because the injured person was under a contract with that other, unknown to the doer of the wrong. . . . The law does not spread its protection so far. 275 U.S. at 309. Justice Holmes's pronouncement could have been read merely as negating a claim of negligent interference with contract. See Getty Refining and Marketing Co. v. MT FADI B, ___ ________________________________ _________ 766 F.2d 829, 831-32 (3d Cir. 1985). Instead, Robins has ______ generally been taken to establish the broader rule that -5- -5- purely economic losses arising from a tort, but unaccompanied by physical injury to anything in which the plaintiff has a proprietary interest, are not compensable under federal maritime law. See, e.g., State of Louisiana ex rel. Guste v. _________ ________________________________ M/V Testbank, 752 F.2d 1019, 1022 (5th Cir. 1985) (en banc), _____________ cert. denied, 477 U.S. 903 (1986). Our circuit adopted this _____________ broader reading in Barber Lines A/S v. M/V Donau Maru, 764 _________________ _______________ F.2d 50, 51-52 (1st Cir. 1985), and, in any event, the secondary nature of the economic injury here--which is akin to interference with contract--would likely bring this case within even a narrow reading of Robins. ______ Several courts have recognized exceptions to Robins, but ______ none of the familiar examples apply in this case.1 The district court so held, and the dealers do not challenge that conclusion on appeal. Accordingly, we agree that plaintiffs' federal claims for purely economic losses under the general maritime law are barred. The appeal thus turns upon the extent to which Robins bars the states from permitting a ______ different result under state law pursuant to the exercise of _____ the state's police powers. Although the Judiciary Act of 1789 vested "exclusive ____________________ 1The classic exceptions include claims brought by fishermen as "favorites of admiralty," see Union Oil Co. v. ___ ______________ Oppen, 501 F.2d 558 (9th Cir. 1974), and claims for economic _____ losses that are intentionally caused, see Dick Meyers Towing ___ __________________ Service, Inc. v. United States, 577 F.2d 1023, 1025 (5th Cir. _____________ _____________ 1978), cert. denied, 440 U.S. 908 (1979). ____________ -6- -6- original cognizance of all civil causes of admiralty and maritime jurisdiction" in the federal courts, the act added a provision "saving to suitors, in all cases, the right of a common law remedy, where the common law is competent to give it." 1 Stat. 76-77. The modern version of the statute saves "all other remedies to which [suitors] are otherwise entitled." 28 U.S.C. 1333. The upshot is that an injured party may have claims arising from a single accident both under federal maritime law and under state law, whether legislation or common law. See G. Gilmore & C. Black, Jr., ___ The Law of Admiralty 1-13, at 37 (2d ed. 1975). State _____________________ remedies under the savings to suitors clause may be pursued in state court or, where there is a basis for federal jurisdiction, in federal court. Whether a state claim is litigated in a federal court or a state forum, "the extent to which state law may be used to remedy maritime injuries is constrained by a so-called `reverse-Erie' doctrine which requires that the substantive ____ remedies afforded by the States conform to governing federal maritime standards." Offshore Logistics, Inc. v. Tallentire, ________________________ __________ 477 U.S. 207, 223 (1986) (citations omitted). How far this conformity requirement extends, and whether it preempts the dealers' state-law claims, are the central issues in this case. On appeal, the dealers mainly stress their claims under -7- -7- Rhode Island's Compensation Act. The Compensation Act provides generally that owners or operators of seagoing vessels may be held liable for harms arising from negligence of the owner, operator or agents or from the violation of Rhode Island pilotage and water pollution laws. See R.I. Gen. ___ Laws 46-12.3-2, 46-12.3-3. The statute also contains the following specific provisions regarding economic loss: (a) A person shall be entitled to recover for economic loss . . . if the person can demonstrate the loss of income or diminution of profit to a person or business as a result of damage to the natural resources of the state of Rhode Island caused by the violation of any provision [of the piloting or water pollution laws] by the owner or operator . . . of the seagoing vessel and/or caused by the negligence of the owner or operator . . . of the seagoing vessel. (b) In any suit brought to recover economic loss it shall not be necessary to prove that the loss was sustained as a result of physical injury to the person or damage to his or her property, nor shall it be a defense to any claim that the defendant owed no special duty to the plaintiff or that the loss was the result of governmental action taken in response to the violation and/or negligence of the defendant. (c) Without limiting the generality of the foregoing, persons engaged in commercial fishing or shellfishing and/or the processors of fish or shellfish, who can demonstrate that they have sustained a loss of income or profit as a result of damage to the environment resulting from [violations of law or negligence] . . . shall have a cause of action for economic loss. Persons employed by, or who operate businesses, who have sustained a loss of income or profit as a result of a decrease in the volume of business caused by the damage to the environment shall also be -8- -8- entitled to maintain an action for economic loss. R.I. Gen. Laws 46-12.3-4. For the purposes of this appeal only, Ballard concedes that the dealers would have a valid cause of action under this statute, and that the Compensation Act, which became effective on September 30, 1990, may be applied retroactively to cover the 1989 M/V World Prodigy spill.2 We think that the statutory claims effectively subsume state common law claims since the Compensation Act appears to go as far and further than common law in departing from Robins. Thus, we ______ focus upon the statute. The shipowner and captain insist, and the district court agreed, that the state claims are preempted under the doctrine of Southern Pacific Co. v. Jensen, 244 U.S. 205 _____________________ ______ (1917). Jensen, in a now famous passage, held that state ______ legislation affecting maritime commerce is invalid "if it contravenes the essential purpose expressed by an act of Congress, or works material prejudice to the characteristic features of the general maritime law, or interferes with the proper harmony and uniformity of that law in its interna- tional and interstate relations." Id. at 216. ___ ____________________ 2See 1990 R.I. Pub. Laws ch. 198, 2 (providing that ___ the Compensation Act shall apply to all causes of action pending on or after September 30, 1990, regardless of when the violation and/or act of negligence occurred, as long as suit was commenced within the applicable statute of limitations). -9- -9- Jensen, however, was by its own terms something less ______ than a rule of automatic and mechanical preemption. "It would be difficult, if not impossible," said the Court, "to define with exactness just how far the general maritime law may be changed, modified, or affected by state legislation. That this may be done to some extent cannot be denied." 244 _______________________________________________________ U.S. at 216 (emphasis added). What is even more telling is that the Supreme Court after Jensen, without ever repudiating ______ its language, upheld the application of state law in a number of maritime-related cases despite the existence of a direct conflict between maritime rules and state law. This saga is recounted in Professor Currie's classic article, aptly titled "Federalism and the Admiralty: `The Devil's Own Mess,'" 1960 Sup. Ct. Rev. 158. A familiar example is Just v. Chambers, 312 U.S. 383 (1941), where the ____ ________ Court permitted a state law claim for personal injury occurring on board a ship against the estate of the vessel's owner, despite a contrary maritime rule that a shipowner's liability does not survive his death. This year, in American ________ Dredging Co. v. Miller, 114 S. Ct. 981 (1994), the Court _____________ ______ upheld a Louisiana open-forum statute, making the forum non _________ conveniens doctrine unavailable in savings clause cases, even __________ though forum non conveniens is a part of federal maritime _____________________ law. American Dredging assertedly reaffirms Jensen's three- _________________ ______ -10- -10- prong test for preemption quoted above. Since no act of Congress directly governs our case, the first prong (contravention) is irrelevant to our case. The third prong ("proper harmony and uniformity") we reserve for consideration below. What is of immediate concern is the second ("material prejudice") prong; and here, American ________ Dredging gave the famous language a twist that could not ________ easily have been anticipated by the litigants in this case or by the district court. Judged by the bare language of Jensen, the Compensation ______ Act might easily seem to do "material prejudice" to a "characteristic feature" of maritime law, since Robins is the ______ governing maritime rule and the Compensation Act rejects Robins in everything but name. But the word "characteristic" ______ has different shadings, and American Dredging, in its first _________________ and most important holding, gives the "characteristic feature" language a definitive meaning: it reads the phrase to apply--and apparently only to apply--to a federal rule that either "originated in admiralty" or "has exclusive application there." 114 S. Ct. at 987. Indeed, Justice Scalia goes on to say that the doctrine at issue in American Dredging, the doctrine of forum non ___________________ __________ conveniens, "is and has been a doctrine of general __________ application" and that "therefore" its disregard by Louisiana does not prejudice "[a} characteristic featur[e]" of general -11- -11- maritime law." 114 S. Ct. at 987. Further, only so narrow a reading of the characteristic feature test comports with the result in American Dredging. Since the forum non conveniens ______ _________________ ____________________ doctrine had long and widespread application in admiralty cases, id. at 986, a broad reading of the characteristic ___ feature test would have resulted in preemption. Although it is easier to identify the origins of a doctrine recognizing liability than one denying it, we have found no evidence that Robins' denial of recovery for purely ______ economic losses originated in admiralty. Justice Holmes's opinion in Robins presents the rule as a virtual truism for ______ which "no authority need be cited," 275 U.S. at 309, and refers the reader to three other opinions in which "[a] good statement [of the rule] will be found." Id. (citing Elliot ___ ______ Steam Tug Co., Ltd. v. The Shipping Controller, 1 K.B. 127, ___________________ _______________________ 139, 140 (1922); Byrd v. English, 117 Ga. 192, 43 S.E. 419 ____ _______ (1903); and The Federal No. 2, 21 F.2d 313 (2d Cir. 1927)). __________________ Although Elliot Steam Tug and The Federal No. 2 are both _________________ __________________ maritime cases, Byrd involved a suit against a defendant who ____ had negligently damaged the lines supplying power to plaintiff's printing company. Justice Holmes also cited another case, National Savings Bank v. Ward, 100 U.S. 195 ______________________ ____ (1879), which involved a suit by a plaintiff who had relied upon a certificate of title prepared by the defendant attorney for a third party. -12- -12- The rule applied in Robins is also sometimes traced to ______ Cattle v. Stockton Waterworks Co., 10 Q.B. 453 (1875), which ______ _______________________ concerned liability for delays suffered by plaintiff's construction company caused by water leaking from defendant's pipes. The admiralty cases thus reflect a traditional, if not invariable, "general principle denying liability for purely economic loss in the law of negligence." Atiyah, "Negligence and Economic Loss," 83 L.Q. Rev. 248, 248-51 (1967). In sum, "Robins broke no new ground but instead ______ applied a principle, then settled both in the United States and England, which refused recovery for negligent interference with `contractual rights.'" Testbank, 752 F.2d ________ at 1022. Nor has the doctrine forbidding recovery of such losses had "exclusive" application in admiralty. State of Louisiana __________________ ex rel. Guste v. M/V Testbank, 752 F.2nd 1019, 1022 (5th Cir. _____________ ____________ 1985) (en banc), cert. denied, 477 U.S. 903 (1986). Rather, ____________ courts have denied liability for purely economic harm in a variety of land-based contexts.3 Such cases rest on a ____________________ 3See, e.g., Dundee Cement Co. v. Chemical Laboratories, _________ _________________ ______________________ Inc., 712 F.2d 1166 (7th Cir. 1983) (denying recovery for ____ lost profits from owner of tanker truck which overturned, blocking the only entrance to plaintiff's cement plant); Nebraska Innkeepers, Inc. v. Pittsburgh-Des Moines Corp., 345 _________________________ ___________________________ N.W.2d 124 (Iowa 1984) (holding that businesses adversely affected by closing of bridge in which cracks developed could not recover for economic losses against the builder of the bridge); Stevenson v. East Ohio Gas Co., 73 N.E.2d 200 (Ohio _________ _________________ Ct. App. 1946) (holding that plaintiff could not recover lost wages against defendant, whose negligence in storing -13- -13- concern about extending the scope of tort liability beyond the generally limited class of individuals who suffer physical damage to person or property. See Rabin, "Tort ___ Recovery for Negligently Inflicted Economic Loss: A Reassessment," 37 Stan. L. Rev. 1513, 1528 (1985). This concern stretches landward quite as much as seaward. Thus, we hold that Rhode Island's decision to depart from Robins ______ does not materially prejudice a rule that originated in or is exclusive to general maritime law. Even absent prejudice to a characteristic feature of admiralty, state legislation is preempted if (under Jensen's ______ third test) it "interferes with the proper harmony and uniformity" of maritime law. Jensen, 244 U.S. at 216. As ______ Justice Scalia observed in considering this question, "[i]t would be idle to pretend that the line separating permissible from impermissible state regulation is readily discernible in our admiralty jurisprudence, or indeed is even entirely consistent within our admiralty jurisprudence." American ________ Dredging, 114 S. Ct. at 987. He did not, however, articulate ________ a definitive test of harmony and uniformity, holding only that there is no preemption where the relevant state law is procedural rather than substantive. Id. at 988. In our case, ___ the Rhode Island statute is indisputably substantive. ____________________ explosives caused destruction of plaintiff's nearby place of employment); Hart Eng'g Co. v. FMC Corp., 593 F. Supp. 1471, ______________ _________ 1481-84 (D.R.I. 1984) (Selya, J.). -14- -14- Where substantive law is involved, we think that the Supreme Court's past decisions yield no single, comprehensive test as to where harmony is required and when uniformity must be maintained. Rather, the decisions however couched reflect a balancing of the state and federal interests in any given case. See, e.g., Kossick v. United Fruit Co., 365 U.S. 731, _________ _______ ________________ 738-42 (1961); Huron Portland Cement Co. v. City of Detroit, __________________________ _______________ 362 U.S. 440, 442-48 (1960). Our circuit has acknowledged that "the Supreme Court . . . no longer construes the Admiralty Clause as requiring `rigid national uniformity in maritime legislation,'" Carey v. Bahama Cruise Lines, 864 _____ ____________________ F.2d 201, 207 (1st Cir. 1988), and that the preemption issue "ordinarily requires a delicate accommodation of federal and state interests." Id. As Professor Currie summed up the ___ matter: The maritime nature of an occurrence does not deprive a state of its legitimate concern over matters affecting its residents or the conduct of persons within its borders; but the federal admiralty powers were granted to protect certain federal interests in maritime and commercial affairs. An issue created by such a conflict of interests can be resolved only by reference to those interests and by an attempt to maximize the effectuation of the proper concerns of both state and nation. 1960 Sup. Ct. Rev. at 169. In balancing the state interest in regulation against a potential overriding federal need for harmony or uniformity, we start with Rhode Island's interest in implementing its -15- -15- Compensation Act. No one can doubt that the state's interest in avoiding pollution in its navigable waters and on its shores, and in redressing injury to its citizens from such pollution, is a weighty one. In Huron Portland Cement, the ______________________ Supreme Court described state air pollution laws as a classic example of police power, and continued: "In the exercise of that power, the states . . . may act, in many areas of interstate commerce and maritime activities, concurrently ________________________ with the federal government." 342 U.S. at 442 (emphasis added). In Askew v. American Waterways Operators, Inc., 411 U.S. _____ __________________________________ 325 (1973), the Court sustained, against a maritime-law preemption challenge, a Florida statute that imposed no-fault liability on vessel owners and operators for damages to private parties caused by oil spills in territorial waters. Justice Douglas described oil spillage as "an insidious form of pollution of vast concern to every coastal city or port and to all the estuaries on which the life of the ocean and lives of the coastal people are greatly dependent." Id. at ___ 328-29. See also id. at 332-43. ___ ____ ___ Claimants in this case argue flatly that Askew, without _____ more, sustains the Rhode Island statute; and perhaps it does. The difficulty is that Justice Douglas rejected the maritime law preemption claim on the ground that Jensen had nothing to ______ do with "shoreside injury by ships on navigable waters." 411 -16- -16- U.S. at 344. "Historically," said Justice Douglas, "damages to the shore or to shore facilities were not cognizable in admiralty." Id. at 240. Although Congress had by statute ___ extended admiralty jurisdiction shoreword in 1948, the Court said that this extension did not carry Jensen with it. Id. ______ ___ at 341. If Justice Douglas meant to avoid preemption for physical damage to the shore or shore facilities, as his words seem to suggest, this might easily not embrace damage to bay waters or the beds beneath them. If instead Askew _____ meant to allow a state remedy for any intangible impact or loss ultimately felt on shore, it is hard to see what would be left of preemptive federal authority since the most traditional of admiralty events--for example, a ship collision or a seaman's death-- has such intangible effects ashore. However the riddle of Askew is solved, we think it _____ safest to take it here merely to show, as it assuredly does, the importance of the state's interest in providing remedies for vessel-caused oil pollution damage. The federal interest in limiting remedies is more subtle but also not without importance. The Compensation Act does not regulate the out-of-court behavior of ships or sailors-- what is sometimes called "primary conduct"; rather the act is concerned with the liability imposed for conduct that is already unlawful. State regulation of primary conduct in the -17- -17- maritime realm is not automatically forbidden, e.g., Ray v. ____ ___ Atlantic Richfield Co., 435 U.S. 151, 179-80 (1978), but such ______________________ regulation presents the most direct risk of conflict between federal and state commands, or of inconsistency between various state regimes to which the same vessel may be subject.4 Instead, the question here is the familiar one of burden. At some point, a regime of liability, or a diversity of regimes, could impose or threaten such heavy costs that maritime commerce may itself be impaired. Initially such costs are borne by shipowners but in the end they affect every business that uses ships or receives raw materials by ship and every citizen who, as a worker or consumer, depends upon such commerce. A regime may also be so difficult to administer as to prevent the efficient and predictable resolution of maritime disputes. These are not trivial or irrelevant concerns, for "the fundamental interest giving rise to maritime jurisdiction is the protection of maritime commerce."5 ____________________ 4O'Melveny & Myers v. Federal Deposit Ins. Corp., 114 S. _________________ __________________________ Ct. 2048, 2055 (1994) (suggesting that uniformity is most important where the rule at issue is one governing primary conduct); American Dredging, 114 S. Ct. at 988-89 (noting _________________ that "forum non conveniens does not bear upon the substantive ____________________ right to recover, and is not a rule upon which maritime actors rely in making decisions about primary conduct"). 5Exxon Corp. v. Central Gulf Lines, Inc., 111 S. Ct. ___________ _________________________ 2071, 2074 (1991) (internal quotations omitted). The Supreme Court has regularly considered such burdens in admiralty -18- -18- Indeed, these very concerns--with the burden of liability and of administration--underpin the Robins rule ______ itself and are discussed at length in Barber Lines, 754 F.2d ____________ at 54-55. But it is one thing to say that a federal court, largely responsible for shaping the common law of admiralty, should follow a longstanding liability rule to govern a federal cause of action. It is quite another to say that a state remedy, presumptively preserved under the savings to suitors clause, is potentially so disruptive as to be unconstitutional. Where as here the state remedy is aimed at a matter of great and legitimate state concern, a court must act with caution. The question, then, is whether absent the Robins rule ______ there remain limitations on the scope of recovery under the Compensation Act adequate to limit the burden it imposes on maritime commerce. The Compensation Act has yet to be construed by the Rhode Island courts. We nevertheless assume that its extension of liability to cover all "loss of income or diminution of profit . . . as a result of damage to the _______________ ____________________ preemption cases, see, e.g., Ray v. Atlantic Richfield Co., _________ ___ ______________________ 435 U.S. 151, 179-80 (1978); Huron Portland Cement, 362 U.S. _____________________ at 443-44, and has drawn explicit parallels between admiralty preemption and Commerce Clause analysis. See Davis v. ___ _____ Department of Labor and Industries of Washington, 317 U.S. __________________________________________________ 249, 257 (1942); Wilburn Boat Co. v. Fireman's Fund Ins. Co., ________________ _______________________ 348 U.S. 310, 323-24 (1955) (Frankfurter, J., concurring in the result). This does not, however, mean that the admiralty clause simply duplicates a commerce clause analysis. See ___ American Dredging, 114 S. Ct. at 988 n.3. _________________ -19- -19- natural resources of the state of Rhode Island caused by the ______ violation of [Rhode Island pilotage or pollution laws]," R.I. Gen. Laws 46-12.3-4 (emphasis supplied), incorporates the familiar tort limitations of foreseeability and proximate cause. These principles do in some measure limit the burden imposed on maritime shipping. Foreseeability may extend some distance, cf. Barber ___ ______ Lines, 764 F.2d at 52, and "remoteness" is scarcely a sharply _____ defined concept. Compare Petitions of Kinsman Transit Co., _______ _________________________________ 388 F.2d 821 (2d Cir. 1968) (rejecting Robins but excluding ______ economic losses suffered by the owner of a vessel prevented from unloading its cargo above a bridge that collapsed as a result of defendant's negligence as too remote to permit recovery). We cannot be sure how Rhode Island courts will develop these concepts in the context of oil pollution cases. Depending on Rhode Island's solutions, the burdens imposed by the Compensation Act, financial and administrative, may be substantial but they may also be tolerable. One might say that the case for preemption at this stage is subject to the Scotch verdict--not proven. Having said all this, we think one final consideration tips the scales in favor of the Compensation Act's validity. Congress has recently enacted the Oil Pollution Act, 33 U.S.C. 2701 et seq., which almost certainly provides for _______ -20- -20- recovery of purely economic damages in oil spill cases.6 Section 2702(b)(2)(E) of the act provides that "[d]amages equal to the loss of profits or impairment of earning capacity due to the injury, destruction, or loss of real property, personal property, or natural resources, . . . shall be recoverable by any claimant." The House Conference Report makes clear that, under section 2702(b)(2)(E), "[t]he claimant need not be the owner of the damaged property or resources to recover for lost profits or income". H.R. Conf. Rep. No. 101-653, 101st Cong., 2d Sess. 103 (1990). The act also expressly provides that it does not preempt state imposition of additional liability requirements. 33 U.S.C. 2718(a). The statute contains another substantial piece of evidence that Congress means to allow recovery of economic losses from injury to natural resources even though the claimant's own property was not damaged. In another subsection of the damage provision, there is an explicit provision for recovery of "economic losses resulting from destruction of real or personal property" by a claimant "who ____________________ 6We say "almost" only because one court has held to the contrary. See In re Petition of Cleveland Tankers, Inc., 791 ___ __________________________________________ F. Supp. 669, 678-79 (E.D. Mich. 1992). Most commentators, by contrast, have read the new statute--as its language and legislative history suggest--to override the Robins Dry Dock _______________ rule, see McCurdy, "An Overview of OPA 1990 and Its ___ Relationship to Other Laws," 5 U.S.F. Mar. L.J. 423 (1993); Gonynor, "The Robins Dry Dock Rule: Is the `Bright Line' ________________ Fading?" 4 U.S.F. Mar. L.J. 85 (1992). -21- -21- owns or leases that property." 33 U.S.C. 2707(b)(2)(B). If the "natural resources" injury provision in subsection (E) were limited to those owned by the claimant, the recovery thus provided would be already covered by subsection (B) and subsection (E) would be redundant. United States v. Ven- _____________ ____ Fuel, Inc., 758 F.2d 741, 751-52 (1st Cir. 1985) (readings __________ that create redundancies are not favored). The new federal statute does not apply retroactively to govern the present case. See Pub. L. No. 101-380, 1020 ___ (providing that the statute "shall apply to an incident occurring after the date the enactment of this Act [August 18, 1990]."). But we think that the statute is compelling evidence that Congress does not view either expansion of liability to cover purely economic losses or enactment of comparable state oil pollution regimes as an excessive burden on maritime commerce. Given the Congress' superior ability to weigh the very practical considerations relating to such a judgment, we give Congress' conclusion substantial weight. For this purpose, the non-retroactivity of the statute is irrelevant. We hold, then, that the Rhode Island's Compensation Act as reasonably construed and applied is not preempted by the admiralty clause of the Constitution. We express no judgment on whether claimants' particular injuries were reasonably foreseeable or proximately caused by the grounding of the M/V -22- -22- World Prodigy, or whether claimants' claims are otherwise viable under the Rhode Island statute. That determination is for the district court in the first instance or for the state courts. Robins Dry Dock remains the rule in this circuit for _______________ federal claims; we simply hold that Rhode Island is free to chart a different course. Because of the Oil Pollution Act, it may well be that the immediate problem with which we have wrestled at length in this case is a transient one; the legal regime for oil pollution accidents after August 18, 1990, will largely be a creature of the new statute. But the case before us, like all cases, is important to the litigants, and the governing legal standards have application elsewhere. Applying an imprecise federal preemption standard to a little construed state statute is no easy task. For the present, assuming that the Rhode Island statute is providently construed and applied, we think that it is not unconstitutional. The decision of the district court dismissing plaintiffs' federal claims is affirmed; the dismissal of ________ plaintiffs' state claims is reversed and the case is remanded ________ ________ for further proceedings consistent with this opinion. -23- -23-