In the Matter of the Complaint of NAUTILUS MOTOR TANKER CO., LTD., as Owner of the M/T BT Nautilus for Exoneration from or Limitation of Liability.

Civ. A. No. 90–2419.

United States District Court,
D. New Jersey.

Sept. 28, 1995.

Goldstein Till & Lite by Andrew J. Goldstein, Newark, NJ and Haight, Gardner, Poor & Havens by John J. Reilly, New York City, for Limitation Plaintiff Nautilus Motor Tanker Co., Ltd.

Hill, Rivkins, Loesberg, O'Brien, Mulroy & Hayden by Richard H. Webber and Robert E. Daley, New York City, for Limitation Defendant Coastal Oil New York, Inc.

## OPINION

BASSLER, District Judge:

Limitation Plaintiff, Nautilus Motortanker, Ltd. ("Nautilus") and Limitation Claimant, Coastal Oil New York, Inc. ("Coastal") cross-move for summary judgment pursuant to Federal Rule of Civil Procedure 56. To resolve these motions, the Court must determine whether Nautilus is liable for purely economic losses incurred by Coastal as a result of the June 7, 1990 grounding of the BT Nautilus, a ship owned by Nautilus. This Court possesses jurisdiction over this admiralty action under 28 U.S.C. § 1333.

For the reasons set forth in this Opinion, Nautilus' motion for summary judgment is **denied** and Coastal's cross-motion for summary judgment is **granted.**

## I. BACKGROUND

The dispute between the parties arises from an oil spill that occurred when the motortanker, BT Nautilus, owned by Limitation Plaintiff, Nautilus, ran aground on its way to a berth owned by Limitation Claimant, Coastal. The details of the grounding and the substantial spill of fuel oil into the Kill Van Kull Waterway have been set forth in detail in this Court's prior Opinion, reported at 862 F.Supp. 1260 (D.N.J.1994), and need not be reiterated here. In that Opinion, issued after a bench trial, this Court held that Nautilus was 100% responsible for the grounding of the BT Nautilus and the resulting oil spill. The Court exonerated Coastal from any liability in connection with the accident. That judgment is currently on appeal to the Third Circuit.

The parties' cross motions for summary judgment relate to Coastal's claim against Nautilus to recover purely economic losses caused by the spill. Shortly after the spill, the BT Nautilus arrived at Coastal's berth, where it remained until June 19, 1990, in order to complete temporary repairs. While Coastal concedes that it did not suffer any physical damage to its property as a result of the spill, Coastal has filed this claim to recover damages for interruption of its business and interference with its contractual relationships with third parties that resulted from the BT Nautilus' unexpected and lengthy stay in Coastal's berth.

## II. DISCUSSION

### A. Impact of Pending Appeal

■ In response to this Court's September 27, 1994 Opinion and Order finding Nautilus 100% responsible for the spill and resulting damage, Nautilus filed an appeal under 28 U.S.C. § 1292(a)(3). *See Kingstate Oil v. M/V Green Star,* 815 F.2d 918, 921 (3d Cir.1987), *Cummings v. Redeeriaktieb Transatlantic,* 242 F.2d 275, 276 (3d Cir. 1957). The purpose of § 1292 is to permit immediate appeal once a determination of liability has been made, in order to avoid the potentially unnecessary delay and expense required to make a finding as to the amount of damages if the liability determination is ultimately reversed. *See id.*

■ Although a pending appeal ordinarily deprives a district court of jurisdiction, an exception to this rule applies where the issues involved on appeal are only peripherally related to the issue presented in district court. *See e.g., Compania Espanola de Pet., S.A. v. Nereus Ship.,* 527 F.2d 966 (2d Cir. 1975). Both Nautilus and Coastal argue that this exception applies to Coastal's claim for damages.

The parties' cross-motions for summary judgment relate to the type of damages that Coastal is entitled to recover from whatever party is ultimately found liable. Even if the Third Circuit were to reverse this Court's September 27, 1994 judgment against Nautilus, unless Coastal were found to be 100% responsible (in contrast to this Court's prior determination of 0% responsibility), the types of damages recoverable by Coastal would need to be identified. The amount of dam-

ages and the appropriate apportionment of them are not at issue on this motion.

Since the type of damages recoverable by Coastal will almost certainly need to be resolved, there is no savings of time or expense to be gained from delaying decision on this issue. Both parties are in favor of an immediate resolution. Under these circumstances, the Court chooses to exercise its discretion to entertain the cross-motions for summary judgment at this time.

### B. Summary Judgment Standard

Summary judgment is appropriate only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). Whether a fact is material is determined by the applicable substantive law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). An issue involving a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Healy v. New York Life Ins. Co.,* 860 F.2d 1209, 1219 n. 3 (3d Cir. 1988), *cert. denied,* 490 U.S. 1098, 109 S.Ct. 2449, 104 L.Ed.2d 1004 (1989).

The moving party has the initial burden of showing that no genuine issue of material fact exists. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). Where the moving party satisfies this requirement, the burden shifts to the nonmoving party to present evidence that there is a genuine issue for trial. *Id.* at 324, 106 S.Ct. at 2553. Once the moving party has carried its burden of establishing the absence of genuine issues of material fact, the nonmoving party "may not rest upon mere allegations or denials" of its pleading, Federal Rule of Civil Procedure 56(e), but must produce sufficient evidence to reasonably support a jury verdict in its favor, *Anderson,* 477 U.S. at 249, 106 S.Ct. at 2510–11, and not just "some metaphysical doubt as to material facts." *Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

In determining whether any genuine issues of material fact exist, the Court must resolve "all inferences, doubts, and issues of credibility ... against the moving party." *Meyer v. Riegel Products Corp.,* 720 F.2d 303, 307 n. 2 (3d Cir.1983), *cert. dism'd.,* 465 U.S. 1091, 104 S.Ct. 2144, 79 L.Ed.2d 910 (1984) (*citing Smith v. Pittsburgh Gage & Supply Co.,* 464 F.2d 870, 874 (3d Cir.1972)).

Since a motion for summary judgment is designed to go beyond the pleadings, factual specificity is required of a party who opposes such a motion. *Celotex,* 477 U.S. 317, 322–23, 106 S.Ct. at 2552–53 (1986). Accordingly, in order to defeat a properly supported motion for summary judgment, a party may not merely restate the allegations of his complaint. *Farmer v. Carlson,* 685 F.Supp. 1335, 1339 (M.D.Pa.1988). Moreover, a party cannot rely upon self-serving conclusions, unsupported by specific facts in the record. *Celotex,* 477 U.S. at 322–23, 106 S.Ct. at 2552–53. A non-moving party must point to concrete evidence in the record which supports each essential element of his case. *Id.* If the party fails to provide such evidence, then he is not entitled to a trial and the moving-party is entitled to summary judgment as a matter of law. Fed.R.Civ.P. 56(e).

### C. Nautilus' Motion for Summary Judgment

#### 1. Federal Admiralty Law Does Not Impose Liability for Economic Damages Sought by Coastal

■ Coastal concedes that "any federal claim for purely economic loss would be barred under the general maritime law as set forth in *Robins Dry Dock & Repair Co. v. Flint.*" Coastal's Brief in Opposition to Nautilus' Motion for Summary Judgment and in Support of Coastal's Cross Motion for Summary Judgment at 4. Under the rule of *Robins Dry Dock,* a plaintiff ordinarily cannot recover damages for economic loss resulting from the defendant's negligence absent physical harm to person or to property in which the plaintiff has a proprietary interest. 275 U.S. 303, 308–09, 48 S.Ct. 134, 135–36, 72 L.Ed. 290 (1927); *accord State of Louisiana ex rel. Guste v. Testbank,* 752 F.2d 1019, 1022 (5th Cir.1985) (en banc), *cert.*

*denied,* 477 U.S. 903, 106 S.Ct. 3271, 91 L.Ed.2d 562 (1986); *Getty Refining and Marketing Co. v. M/T Fadi B,* 766 F.2d 829 (3d Cir.1985). Coastal concedes that it did not suffer any physical harm to trigger liability under federal admiralty law.

Instead, Coastal asserts claims for economic loss under the New Jersey Spill Compensation and Control Act, N.J.S.A. § 58:10–23.11 et seq., and New Jersey common law, specifically, under the doctrine enunciated in *People Express Airlines, Inc. v. Consolidated Rail Corp.,* 100 N.J. 246, 495 A.2d 107 (1985). In *People Express,* the New Jersey Supreme Court rejected the *Robins Dry Dock* rule and held that "a defendant owes a duty of care to take reasonable measures to avoid the risk of causing economic damages, aside from physical injury, to ... plaintiffs comprising an identifiable class with respect to whom defendant knows or has reason to know are likely to suffer such damages from its conduct." 100 N.J. at 263, 495 A.2d 107. Under *People Express,* traditional foreseeability and proximate causation analysis establish limits upon a defendant's liability for economic loss. *Id.* at 264, 495 A.2d 107. Applying these principles, the New Jersey Supreme Court held that the defendant railroad, which had negligently caused a dangerous chemical gas leak, could be held liable for People Express' lost profits and overhead expenses incurred while the airline was forced to close its operations at a nearby airport. *Id.* at 267, 495 A.2d 107.

### 2. *The Savings Clause*

Under the admiralty jurisdiction statute, district courts have original jurisdiction over "[a]ny civil case of admiralty or maritime jurisdiction, saving to suitors in all cases all other remedies to which they are otherwise entitled." 28 U.S.C. § 1333. Under the savings to suitors clause, an action "cognizable in admiralty may also be brought, assuming the existence of some independent jurisdictional base like diversity of citizenship, as a civil suit ..." *Romero v. Bethlehem Steel Corp.,* 515 F.2d 1249, 1252 (5th Cir.1975), *Rasmussen v. United States,* 1984 A.M.C. 329, 1983 WL 632 (N.D.Cal.1983).

When Nautilus filed its original Complaint, it designated this action "as a case of Admiralty and Maritime jurisdiction." Compl. ¶ 1.

Coastal filed a "Claim and Answer" on September 18, 1990. In the portion designated as Coastal's Claim, Coastal did not identify the jurisdictional basis of its claim against Nautilus for economic damages. Claim and Answer ¶¶ 1–5. In contrast, Nautilus designated its Counterclaim against Coastal as "within the admiralty and maritime jurisdiction of this Court." Plaintiff's Counterclaim at ¶ 1. Coastal, in its Answer to the Counterclaim, admitted the truth of this jurisdictional allegation. Answer to Counterclaim ¶ 1.

At the same time, Coastal, in its Answer to Nautilus' Counterclaim, admitted factual allegations capable of supporting diversity jurisdiction. Coastal admitted that it was incorporated under the law of "one of the States of the United States," and operated a terminal in Bayonne, New Jersey and that Nautilus was a corporation organized under the law of Hong Kong. Answer to Counterclaim ¶¶ 2–3.

At oral argument, this Court expressed concern that Coastal's Claim failed to allege a basis of jurisdiction other than admiralty. Subject matter jurisdiction must be evident from the face of the claim.

In response, Coastal moved for leave to file an Amended Claim and Answer. Nautilus did not oppose the motion. This Court granted Coastal's motion, prompting Coastal to file an Amended Claim and Answer on July 17, 1995, which added allegations establishing the parties' diversity of citizenship and explicitly stating a claim to relief under New Jersey Common law and the Spill Compensation and Control Act ("Spill Act"), N.J.S.A. § 58:10–23.11 et seq. Amended Claim and Answer ¶¶ 7–12.

### 3. *Coastal's Spill Act Claim Fails As A Matter of Law*

■ According to Coastal, the Spill Act authorizes its claim for economic losses against Nautilus. Even in 1990, when the Nautilus spill occurred, the Spill Act permitted individuals to recover from the Spill Fund, cleanup and removal costs, as well as direct and indirect damages caused by a spill, including lost earnings that exceeded 10% of the income ordinarily generated from the

damaged real or personal property or natural resources. N.J.S.A. § 58:10–23.11g.a.

According to Coastal, the Spill Act, in 1990, authorized recovery of such losses not only from the fund, but also from the polluter through a private right of action. Coastal relies upon a provision of the Spill Act which sets a ceiling upon the maximum amount of damages that the Spill Fund may recover from a polluter, absent a showing of fault. N.J.S.A. § 58:10–23.11g.b. The final sentence of this provision states that: "Damages which may be recovered from, or by, any other person shall be limited to those authorized by common or statutory law." § 58:10–23.11g.b.

Contrary to Coastal's assertion, this Spill Act, in 1990, did not authorize a private right of action for cleanup costs or economic damages. *Allied Corp. v. Frola*, 701 F.Supp. 1084, 1091 (D.N.J.1988); *Jersey City Redevelopment Auth. v. PPG Indus.*, 655 F.Supp. 1257 (D.N.J.1987), *aff'd*, 866 F.2d 1410, 1411 (3d Cir.1988). *Compare Mayor and Council of Borough of Rockaway v. Klockner & Klockner*, 811 F.Supp. 1039, 1051–53 (D.N.J. 1993) (holding that Spill Act, after 1991 amendments, did authorize private right of action to recover cleanup and response costs). Therefore, Coastal's Spill Act claim fails as a matter of law.

*4. Federal Admiralty Law Preempts Coastal's Claims Under New Jersey Common Law*

■ "Whether a state claim is litigated in federal court or a state forum, 'the extent to which state law may be used to remedy maritime injuries is constrained by a so-called 'reverse–*Erie*' doctrine which requires that the substantive remedies afforded by the States conform to governing federal maritime standards.'" *Ballard Shipping Co. v. Beach Shellfish*, 32 F.3d 623, 625 (1st Cir. 1994) (quoting *Offshore Logistics, Inc. v. Tallentire*, 477 U.S. 207, 233, 106 S.Ct. 2485, 2499–2500, 91 L.Ed.2d 174 (1986)). In other words, state remedies cannot "'attempt to make changes in substantive maritime law.'" *American Dredging Co. v. Miller*, —— U.S. ——, ——, 114 S.Ct. 981, 985, 127 L.Ed.2d 285 (1994) (quoting *Madruga v. Superior*

*Court of California*, 346 U.S. 556, 561, 74 S.Ct. 298, 301, 98 L.Ed. 290 (1954)).

■ Recently, the United States Supreme Court reaffirmed the three part test, originally set forth in *Southern Pacific Co. v. Jensen*, 244 U.S. 205, 37 S.Ct. 524, 61 L.Ed. 1086 (1917), for determining the validity of state legislation affecting maritime commerce. *American Dredging*, —— U.S. at ——, 114 S.Ct. at 985. Such a state law is invalid if "it contravenes the essential purpose expressed by an act of Congress, or works material prejudice to the characteristic features of the general maritime law, or interferes with the proper harmony and uniformity of that law in its international and interstate relations." *Jensen*, 244 U.S. at 216, 37 S.Ct. at 529. Since the test is worded in the alternative, if any of these three circumstances exist, then federal admiralty law preempts the state law.

*a. Conflict With Acts of Congress*

■ When the Nautilus ran aground in 1990, no federal statute addressed liability for purely economic loss in the absence of physical damage to property in which the claimant had a proprietary interest. Although the parties contest whether the subsequently enacted Oil Pollution Act of 1990 ("OPA"), 33 U.S.C. §§ 2701–2761, specifically, section 2702(b)(2), imposes liability for purely economic harm, the parties concede that the OPA was not in effect on the date of the accident. New Jersey's common law, which dispenses with the requirement of physical harm to a proprietary interest in order to recover purely economic losses, therefore does not contravene the essential purpose of any Congressional statute. *See People Express*, 100 N.J. at 263, 495 A.2d 107. As a result, New Jersey's common law is not preempted on the ground that it conflicts with a governing federal statute.

*b. Material Prejudice to Characteristic Features of Maritime Law*

■ In order to determine whether state law "works material prejudice to the characteristic features of the general maritime law," *Jensen*, 244 U.S. at 216, 37 S.Ct. at 529, the Supreme Court recently explained that

"characteristic features" of admiralty include only those federal legal rules that either "originated in admiralty" or "ha[ve] exclusive application there." *American Dredging,* —— U.S. at ——, 114 S.Ct. at 987. The First Circuit Court of Appeals has recently performed this two step inquiry with respect to the *Robins Dry Dock* rule precluding recovery of purely economic loss absent physical harm to a proprietary interest. *Ballard,* 32 F.3d at 627–28.

As the First Circuit noted, *Robins Dry Dock* itself indicated that its holding limiting recovery for purely economic losses rested upon generally accepted principles of tort liability not specifically grounded in maritime law. According to Justice Holmes the *Robins* holding rested upon a principle for which "no authority need be cited." *Ballard,* 32 F.3d at 627 (quoting *Robins Dry Dock,* 275 U.S. at 309, 48 S.Ct. at 135). Justice Holmes did, however, cite several cases setting forth this rule; some of the cases were admiralty actions and others were not. *Robins Dry Dock,* 275 U.S. at 309, 48 S.Ct. at 135. Rather than break new ground, *Robins* "instead applied a principle, then settled in the United States and England, which refused recovery for negligent interference with 'contractual rights.'" *Testbank,* 752 F.2d at 1022. Therefore, the First Circuit concluded, and this Court agrees, that the *Robins Dry Dock* rule limiting recovery for purely economic losses did not originate in admiralty. *See Ballard,* 32 F.3d at 628.

Moreover, the *Robins Dry Dock* rule does not have "exclusive application" in the admiralty context. *See American Dredging,* —— U.S. at ——, 114 S.Ct. at 987. Both before and after *Robins Dry Dock,* courts applied its holding limiting recovery for purely economic loss in a variety of contexts, including, but not limited to, admiralty. *Robins,* 275 U.S. at 309, 48 S.Ct. at 135 (citing *Byrd v. English,* 117 Ga. 191, 43 S.E. 419 (1903) (applying rule to general commercial dispute)); *National Savings Bank v. Ward,* 100 U.S. 195, 25 L.Ed. 621 (applying rule to bar recovery by plaintiff who relied upon a title certificate prepared by defendant attorney for a third party); *see also Ballard,* 32 F.3d at 628 n. 3 (citations omitted).

Having determined that the *Robins Dry Dock* rule limiting recovery for purely economic losses "neither originated in admiralty nor has exclusive application there," *American Dredging,* —— U.S. at ——, 114 S.Ct. at 987, this Court concludes that the rule is not a "characteristic feature[ ] of the general maritime law." *Jensen,* 244 U.S. at 216, 37 S.Ct. at 529. Therefore, New Jersey's common law as set forth in *People Express,* 100 N.J. at 263, 495 A.2d 107, is not preempted as impermissibly prejudicing federal maritime law. The conflict between New Jersey common law and the *Robins Dry Dock* rule limiting recovery does not in itself require a finding of preemption.

### c. Interference With the Harmony and Uniformity of Maritime Law

▇ If New Jersey common law "interferes with the proper harmony and uniformity" of admiralty law, then it may be preempted in the maritime context. *Jensen,* 244 U.S. at 216, 37 S.Ct. at 529. With respect to Coastal's claim for economic loss, this third prong of *Jensen* is the primary area of controversy.

▇ "The requirement of uniformity is not ... absolute." *American Dredging,* —— U.S. at ——, 114 S.Ct. at 987. While states may change, alter, or modify general maritime law to some extent, the scope of this power remains imprecisely defined. *See id.* (citing *Jensen,* 244 U.S. at 216, 37 S.Ct. at 529). In spite of the need for uniformity in maritime law, the Supreme Court has stated that "this limitation still leaves the States a wide scope." *Id.* (quoting *Romero v. International Terminal Operating Co.,* 358 U.S. 354, 373–74, 79 S.Ct. 468, 480–81, 3 L.Ed.2d 368 (1959)). Justice Scalia has commented, however, that "[i]t would be idle to pretend that the line separating permissible from impermissible state regulation is discernable in our admiralty jurisprudence, or indeed is even entirely consistent within our admiralty jurisprudence." *American Dredging,* —— U.S. at ——, 114 S.Ct. at 987 (citations omitted). Without defining the boundaries of state power to alter maritime law, Justice Scalia concluded that federal admiralty law did not invalidate Louisiana's rejection of the

doctrine of forum non conveniens, which was procedural rather than substantive and itself unlikely to yield uniform results. *Id.*

■■■ Where a state substantive law is involved, the Supreme Court has not articulated a clear test for permissible modification of federal maritime law, but rather has balanced the relevant state and federal interests at stake in a given case. *Ballard,* 32 F.3d at 628 (citing *Kossick v. United Fruit Co.,* 365 U.S. 731, 738–42, 81 S.Ct. 886, 891–94, 6 L.Ed.2d 56 (1961); *Huron Portland Cement Co. v. City of Detroit,* 362 U.S. 440, 442–48, 80 S.Ct. 813, 815–19, 4 L.Ed.2d 852 (1960)). "Where ... the state law is aimed at a matter of great and legitimate state concern, a court must act with great caution," before declaring the state remedy "potentially so disruptive as to be unconstitutional." *Ballard,* 32 F.3d at 630.

In *Ballard,* the First Circuit addressed Rhode Island's Compensation Act, which authorized recovery against ship owners and operators for economic losses caused by damage to natural resources resulting from negligence or violations of the state's water pollution or pilotage laws even where no physical injury occurred. *Id.* at 626 (quoting R.I.Gen Laws § 46–12.3–4). The First Circuit concluded that Rhode Island possessed a "weighty" interest in avoiding pollution and redressing injuries to citizens caused by pollution. *Id.* (citing *Askew v. American Waterways Operators, Inc.,* 411 U.S. 325, 93 S.Ct. 1590, 36 L.Ed.2d 280 (1973)).

The First Circuit then inquired as to whether without the *Robins* rule, the Rhode Island Act imposed "limitations on the scope of recovery ... adequate to limit the burden it imposes on maritime commerce." *Ballard,* 32 F.3d at 630. Although Rhode Island's courts had not yet construed the Compensation Act, the First Circuit assumed that ordinary tort concepts of foreseeability and proximate cause would limit the liability imposed upon shipping interests. *Id.* Until the Rhode Island courts had an opportunity to flush out these concepts and to define the scope of liability, the First Circuit concluded that "the case for preemption at this stage is subject to the Scotch verdict—not proven." *Id.* Finally, the First Circuit reasoned that

the adoption of the federal OPA, "which almost certainly provides for recovery of purely economic damages in oil spill cases" even where the claimant does not have a proprietary interest in the damaged property or natural resources, weighed against preemption. *Id.* at 630–31 (citing 33 U.S.C. §§ 2702(b)(2)(E). The OPA does not preempt states from imposing additional liability. 33 U.S.C. § 2718(a). According to the First Circuit, the OPA provides "compelling evidence that Congress does not view either expansion of liability to cover purely economic losses or enactment of comparable state oil pollution regimes as an excessive burden on maritime commerce." *Id.*

As described by the New Jersey Supreme Court, abandoning the physical harm requirement for recovery of economic losses "discourages others from similar tortious behavior ... vindicates reasonable conduct that has regard for the safety of others, and, ultimately, shifts the risk of loss and associated costs of dangerous activities to those who should be and are best able to bear them." *People Express,* 100 N.J. at 255, 495 A.2d 107. Although this interest is not specific to maritime pollution, unlike Rhode Island's interest in *Ballard,* this does not mean that New Jersey's interest in compensating foreseeable economic injuries and encouraging the exercise of reasonable care to prevent such losses is not "aimed at a matter of great and legitimate state concern." 32 F.3d at 630.

Moreover, as the First Circuit pointed out in *Ballard,* with the enactment of the OPA in 1990, the "uniform" trend in admiralty law is moving towards the imposition of liability for economic losses resulting from damage to or loss of property and natural resources proximately caused by oil spills. Although the OPA did not go into effect until August 18, 1990, more than two months after the Nautilus spill, the passage of this statute substantially, if not entirely, undermines Nautilus' contention that imposition of liability for economic losses would so disrupt maritime commerce that application of New Jersey's common law should be invalidated in the admiralty context. Finally, as the New Jersey Supreme Court pointed out in *People Express,* the *Robins Dry Dock* rule has never acted as

a uniform, absolute bar to recovery, even in admiralty cases. 100 N.J. at 258, 495 A.2d 107 (citing *Carbone v. Ursich,* 209 F.2d 178 (9th Cir.1953) (permitting injured seamen to recover lost wages)).

Admittedly, Nautilus has provided substantial authority to support its argument that the *Robins Dry Dock* rule preempts state law tort claims. *E.g., Testbank,* 752 F.2d at 1032; *In re Exxon Valdez,* 767 F.Supp. 1509 (D.Alaska 1991); *IMTT–Gretna v. Robert E. Lee SS,* 993 F.2d 1193 (5th Cir.1993). For various reasons, however, all of these cases are distinguishable.

In *Testbank,* for example, the Fifth Circuit blanketly concluded that because the claims at issue arose from a collision on a navigable waterway and thus fell within admiralty jurisdiction, federal admiralty law, rather than state law applied. 752 F.2d at 1031–32. The Fifth Circuit did not engage in the *Jensen* preemption analysis recently reaffirmed by the Supreme Court in *American Dredging,* —— U.S. at ——, 114 S.Ct. at 985. Similarly, the district court in *Exxon Valdez* did not apply the *Jensen* test. Even if it had, however, the Alaska statute imposing unlimited strict liability for oil spills probably should have been deemed preempted under the first *Jensen* prong because a federal statute which did not expressly provide for supplemental state remedies placed a $100 million cap on oil spill liability. 767 F.Supp. at 1515–16.

Although *IMTT–Gretna* did apply the *Jensen* test, 933 F.2d at 1195, it did not have the benefit of Justice Scalia's interpretation of the "material prejudice to the characteristic features of admiralty" prong, an interpretation that the First Circuit characterized as "a twist that could not have easily been anticipated." *Ballard,* 32 F.3d at 627. The Fifth Circuit in *IMTT–Gretna* implicitly concluded that the *Robins Dry Dock* rule was a characteristic feature of admiralty law, a conclusion undermined by the Supreme Court's analysis in *American Dredging,* —— U.S. at ——, 114 S.Ct. at 987, and expressly rejected by the First Circuit in *Ballard,* 32 F.3d at 627–28.

Therefore, this Court concludes that federal maritime law does not preempt New Jersey's common law, which imposes liability upon negligent actors for "economic damages, aside from physical injury, to ... plaintiffs comprising an identifiable class with respect to whom defendant knows or has reason to know are likely to suffer such damages from its conduct," as it applies to economic damages resulting from an oil spill. 100 N.J. at 263, 495 A.2d 107. This Court expresses no opinion as to whether *People Express* permits recovery of economic losses in the context of other maritime actions.

■ Applying traditional principles of foreseeability and proximate causation, the Court concludes that Coastal is entitled to summary judgment finding Nautilus liable for economic damages to Coastal caused by the spill. Coastal was not a member of the general public, whose presence at the scene of the spill was merely fortuitous. *See id.* at 263, 495 A.2d 107. Rather, Coastal was a member of "an identifiable class of plaintiffs ... particularly foreseeable in terms of the type of ... entities comprising the class, the certainty or predictability of their presence, the approximate numbers of those in the class, as well as the type of economic expectations disrupted." *Id.* at 264, 495 A.2d 107. As a berth operator, Coastal is a fixed presence in the Kill Van Kull waterway where the accident occurred. In the event of such an accident, it was entirely foreseeable that the Nautilus would wind up at Coastal's berth, its intended destination, to undergo repairs. In addition, it was entirely foreseeable that such repairs would take more time than originally allotted by Coastal to the Nautilus, and that this delay would disrupt Coastal's ability to fulfil its obligations to other vessels, resulting in economic losses. Since Coastal belongs to a class of foreseeable plaintiffs and its economic losses proximately caused by the spill, Nautilus is liable for these damages. Coastal has not moved for a determination of the appropriate quantum of damages and the Court makes no such finding at this time.

### III. *CONCLUSION*

Nautilus' motion for summary judgment is **denied.** Consequently, Coastal's cross-motion for summary judgment is **granted.**